IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
MAY 17, 2004 Session

# IN THE MATTER OF: THE CONSERVATORSHIP OF CLAYTON O. LOVLACE, III

# CLAYTON O. LOVLACE, JR. v. SUSAN VERLAINE IRVINE LOVLACE

**Direct Appeal from the Chancery Court for Hickman County**
**No. 9210108 and 914241     Frank G. Clement, Jr., Sitting by Designation**

---

**No. M2003-01274-COA-R3-CV - Filed June 28, 2004**

---

The trial court granted Mother's petition for conservatorship of the parties' disabled son; enforced MDA provision requiring Father to pay child support beyond child attaining age of majority; increased Father's child support obligation; and ordered Father to continue to maintain life and disability insurance. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY M. KIRBY, J., joined.

David L. McGuffey, Chattanooga, Tennessee, for the appellant, Clayton O. Lovlace, Jr.

James G. Martin, III and Gregory D. Smith, Nashville, Tennessee, for the appellee, Susan Verlaine Irvine Lovlace.

## OPINION

This case concerns the appointment of a conservator and provision of financial support for the disabled adult son of divorced parents. Clayton O. Lovlace, Jr. (Mr. Lovlace) and Susan Verlaine Irvine Lovlace (Ms. Lovlace) were divorced in 1993 by order of Chancery Court for Hickman County when their son, Clay, who is disabled with Down's Syndrome, was 12 years old. Clay reached the age of majority, 18, in March 1999. He has an I.Q. of 40 and suffers speech deficiencies and deficiencies in basic living skills. Despite these challenges, Clay is described by his psychologist as very sociable, outgoing, and kind. He enjoys hobbies, participates in social

activities, and has held several jobs. Clay has lived with Ms. Lovlace in the same home in Centerville since infancy, attended school, and is able to walk to work, church, and social activities.

In April 1999, Ms. Lovlace, who was awarded custody of Clay under the 1993 divorce decree, petitioned the Chancery Court of Hickman County to be appointed Clay's conservator. Mr. Lovlace intervened in the matter and counter-petitioned. Additionally, in May 2000, Mr. Lovlace filed a petition to modify the final decree of divorce. In his petition, Mr. Lovlace argued that the trial court's continuing jurisdiction over issues of child custody and support terminated when Clay reached 18, and that the trial court should consider and decide support issues in the conservatorship proceedings. In her response to Mr. Lovlace's petition, Ms. Lovlace argued that, in their marital dissolution agreement ("MDA"), Mr. Lovlace had contracted to provide support for Clay beyond the age of majority, and that the trial court had subject matter jurisdiction under Tennessee Code Annotated § 36-5-101. She further sought attorney's fees to defend and enforce the support provision of the MDA.

The matter was transferred by agreed order to Judge Frank Clement, Jr., Judge of the Seventh Circuit/Probate Court of Davidson County, upon recusal of the judges of Hickman County. In 2003, the trial court entered an order finding Clay to be disabled; appointing Ms. Lovlace conservator; waiving a bond and annual accounting; enforcing Mr. Lovlace's child support obligation under the MDA; increasing Mr. Lovlace's child support from $1,100 to $1,500 per month; and taxing court costs to Mr. Lovlace. The court also granted Ms. Lovlace reasonable attorney's fees of approximately $45,000. The trial court denied Mr. Lovlace's motions to reopen the record to hear additional evidence and to alter or amend the judgment. The court also denied Mr. Lovlace's motion to stay execution pending appeal. The trial court entered its final order on May 13, 2003, and Mr. Lovlace filed a timely notice of appeal to this Court on May 21, 2003.

### *Issues Presented*

Mr. Lovlace raises the following issues for review by this Court:

(1)     Whether the trial court erred in finding that it retained jurisdiction to consider this matter under the domestic relations statutes rather than treating this matter as a conservatorship case;

(2)     Whether the trial court erred by increasing child support under the divorce decree rather than assessing the Ward's (Clay's) needs and providing support [based on the assessment];

(3)     Whether the trial court erred by failing to balance the respective positions of the Ward and [Mr. Lovlace], including whether the Ward's needs are such as to justify continued maintenance of life insurance and disability insurance on [Mr. Lovlace];

(4)      Whether the trial court erred in holding that monies paid to support the Ward do not belong to the Ward and that an accounting, bond and other safeguards in the guardianship statute do not apply;

(5)      Whether the trial court erred in failing to consider evidence that the pool of resources available to the Ward could be expanded through the use of a special needs trust;

(6)      Whether the trial court erred [in] awarding attorney's fees to [Ms. Lovlace].

Ms. Lovlace raises no additional issues, but requests attorney's fees on appeal.

### *Standard of Review*

Our standard of review of a trial court sitting without a jury is *de novo* upon the record. *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995). We presume the trial court's findings of fact to be correct, unless the preponderance of evidence is otherwise. Tenn. R. App. P. 13(d). Thus, we may not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. We review the trial court's conclusions on matters of law *de novo*, however, with no presumption of correctness. Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

### *Jurisdiction of the Court*

Mr. Lovlace submits the trial court acted without jurisdiction when it enforced the terms and conditions regarding support of Clay under the parties' final decree of divorce. Mr. Lovlace's argument, as we understand it, is that when Clay attained the age of majority, matters regarding his financial support became issues to be adjudicated in the conservatorship action, and that the domestic relations statutes were of no effect. He relies on *Day v. Gatewood*, No. 02A01-9805-CV-00141, 1999 WL 269928 (Tenn. Ct. App. April 30, 1999), *Kilby v. Kilby*, No. 03A019712-CH00549, 1999 WL 76065 (Tenn. Ct. App. Jan. 28, 1999), and *Scott v. Scott,* No. 03A01-9708-CH-00305, 1999 WL 39506 (Tenn. Ct. App. Jan. 29, 1999), for the proposition that the trial court was without subject matter jurisdiction to order continuing support once Clay attained the age of 18. He further asserts that Tennessee Code Annotated § 36-5-101(p)(2) is inapplicable in this case because Clay attained the age of majority two months after the section became effective. We disagree.

*Day*, *Kilby*, and *Scott*, are inapplicable to the case at bar. In those cases, the parties had not entered into an MDA providing for continued support past the age of majority. In the present case, however, the trial court merely enforced the provisions of the parties' 1993 MDA. Mr. Lovlace's assertion that the matter of financial support should have been considered in the context of the conservatorship statutes rather than in the context of the domestic relations statutes is irrelevant in light of the MDA. The MDA entered into by Mr. Lovlace and Ms. Lovlace in 1993 provides:

The parties acknowledge that because of Clay's disability, Mr. Lovlace's child support obligation shall continue beyond his attaining the age of majority. However, in the event Clay should no longer reside primarily with Mrs. Lovlace . . . child support shall be subject to modification should the Court deem it appropriate.

The courts of this state have long recognized that, although a parent's legal duty to support a child generally ends when the child reaches majority, parents may agree to extend support obligations beyond those required by law. *See, e.g., Penland v. Penland*, 521 S.W.2d 222, 224 (Tenn. 1975); *Hawkins v. Hawkins*, 797 S.W.2d 897, 898 (Tenn. Ct. App. 1990). Such an agreement is "a contractual obligation outside the scope of the legal duty of support during minority, and retain[s] its contractual nature, although incorporated in the final decree of divorce." *Penland*, 521 S.W.2d at 224-25.

In this case, the issue of Mr. Lovlace's continuing obligation to provide financial support for Clay is dependent on neither the domestic relations nor conservatorship statutes. It is a contractual matter. In the MDA, Mr. Lovlace unambiguously and voluntarily contracted to provide support for Clay past the age of majority in recognition of Clay's disability. Mr. Lovlace's obligation to provide support was subject to modification only if Clay "should no longer reside primarily with Mrs. Lovlace." Mr. Lovlace does not dispute that Clay continues to reside with Ms. Lovlace, nor does he appeal the trial court's judgment appointing Ms. Lovlace conservator for Clay. In essence, the trial court declined to relieve Mr. Lovlace of his contractual obligation. We affirm the trial court on this issue.

### Increase in Child Support

Mr. Lovlace asserts the trial court erred by increasing his child support obligation. He argues that even if Tennessee Code Annotated § 36-5-101(p)(2) is applicable to this case, it permits the court only to continue the child support obligation, not to increase it. Mr. Lovlace finally submits that the court's decision to increase his child support obligation suggests it was proceeding under the conservatorship statutes, and that an increase in support required proof of Clay's needs.

Tennessee Code Annotated § 36-5-101(p)(1) permits the trial court to continue an obligor parent's duty of support to age 21 where a child is disabled as defined by the Americans with Disabilities Act. Section 101(p)(2) provides that the age limit of 21 shall not apply if the child is severely disabled and lives under the care and supervision of a parent, and where the court finds it is in the child's best interest to remain in such care and where the obligor is financially able to continue to pay child support. Tenn. Code Ann. § 36-5-101(p)(2001).

As noted above, Mr. Lovlace's obligation to support Clay past the age of majority has not been imposed by the court pursuant to its statutory authority, but derives from his binding agreement to do so in the MDA. Mr. Lovlace asserts, however, that the court had no authority to increase the amount of his obligation. We disagree.

-4-

We begin with the MDA. When interpreting the provisions of an MDA that retain their contractual nature, we apply general contract principles. *See Davidson v. Davidson*, 916 S.W.2d 918, 923 (Tenn. Ct. App. 1995). The interpretation of a contract is a matter of law. *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn.1999). When construing a contract, the court must seek to ascertain and effectuate the intent of the parties at the time the agreement was executed. *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 890 (Tenn. 2002). The court must construe the various provisions of a contract together, giving effect to each provision and seeking to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the language they employed. *Davidson*, 916 S.W.2d at 923.

The MDA unambiguously evidences that at the time they entered into the agreement, the parties recognized that Clay would need support beyond the age of majority. Mr. Lovlace unambiguously agreed to provide such support. Moreover, the MDA anticipates that circumstances might require modification of the agreement. Paragraph 35 of the MDA provides:

> This Agreement may be altered, amended or cancelled only by instrument in writing signed by each of the parties, and with respect to child custody, child support and spousal support issues, only with approval of the Court, and this requirement cannot be waived by oral agreement.

Other than providing that child support may be modified should Clay no longer reside with Ms. Lovlace, the agreement is silent regarding the basis upon which modification might be made past the age of majority. Clearly, however, modification, with approval of the court, was anticipated by the parties at the time they entered into the agreement.

We thus turn to whether the trial court properly assessed child support based upon the child support guidelines, rather than upon an assessment of Clay's needs. Mr. Lovlace argues that under *Holtsinger v. Elrod*, No. E2001-00257-COA-R3-CV, 2002 WL 62984 (Tenn. Ct. App. Jan. 17, 2002) (*no perm. app. filed*) and section 36-5-101(p), the court's authority was limited to continuing child support, not increasing the amount. We disagree.

*Holtsinger* recognizes that section 36-5-101(p)(2) permits the court to extend an obligor parent's child support obligation to a severely disabled child indefinitely past the age of majority, even where the issue was not addressed during the divorce proceedings. It is silent on whether the amount is subject to modification. The code, however, provides that in setting continued support, the court may use the child support guidelines. Tenn. Code Ann. § 36-5-101(p)(3)(2001). Thus, section 36-5-101(p)(1)-(2) provide the court with the statutory authority to extend the *obligation* of child support beyond the age of majority, and 36-5-101(p)(3) provides that it may set the *amount* of that obligation in accordance with the child support guidelines.

Moreover, when considering petitions to modify child support, trial courts must increase or decrease support obligations upon a showing of a significant variance between the amount of support provided in the child support guidelines and the amount of support currently ordered, unless such

variance was the result of a previous court-ordered deviation and the circumstances causing the deviation have not changed. *Wade v. Wade*, 115 S.W.3d 917, 920 (Tenn. Ct. App. 2002); Tenn. Code Ann. § 36-5-101(a)(1) (Supp.2002). Thus, section 36-5-101(p)(3) permits the court to base the amount of continued child support on the guidelines, and the guidelines anticipate both increases and decreases in the amount of the obligation. Reading the statutory scheme as a whole, we disagree with Mr. Lovlace that the trial court lacked the authority to increase his child support obligation based upon the child support guidelines. Mr. Lovlace does not contend that support as determined by the trial court is inconsistent with the guidelines, nor does he assert that he is unable to pay such support. We accordingly affirm the judgment of the trial court on this issue.

### *Maintenance of Life and Disability Insurance*

Mr. Lovlace submits the trial court erred in ordering him to continue to maintain life and disability insurance to secure his support obligations. We disagree.

In paragraph two of the MDA, Mr. Lovlace contractually agreed to provide child support for Clay beyond the age of majority. In paragraphs four and six, he agreed to maintain life insurance and disability insurance, respectively, to secure his child support obligation. This issue is without merit.

### *Accounting and Bond*

Mr. Lovlace argues the trial court erred by waiving the requirements of a bond as required by the conservatorship statutes. The statute provides:

> (a)(1) Except as otherwise provided in subsection (b), bond shall be required of the fiduciary in an amount equal to the sum of the fair market value of all personal property and the amount of the anticipated income from all property, including the real property, for one (1) year. If the surety for the bond is posted by a corporate surety, the amount of the surety shall equal the amount of the bond. If the surety for the bond is posted by pledging property, the value of the unencumbered property posted shall be equal to one hundred fifty percent (150%) of the bond.
>
> . . . .
>
> (b) In the discretion of the court, bond may be excused if the court makes a finding, which finding shall be stated in the order, that the requirement of bond would be unjust or inappropriate in such case and that one (1) of the following exists:
> (1) The fiduciary is a financial institution excused from the requirement of bond under § 45-2-1005;
> (2) The total fair market value of the minor's or disabled person's non-real estate property does not exceed the sum of ten thousand dollars ($10,000) and the

court finds the benefit to the ward by saving the expense outweighs the risks incident to the absence of a bond;

Tenn. Code Ann. § 34-1-105(a)(b)(2001).

The trial court found that the value of Clay's non-real estate property is less than $10,000 and that the benefit to Clay of saving the expense of a bond outweighs the risks incident to the absence of a bond. Mr. Lovlace submits, however, that the trial court erred because Clay has been awarded an income stream of over $10,000. We disagree.

Our objective when construing a statute is to effectuate the purpose of the legislature. *Lipscomb v. Doe*, 32 S.W.3d 840, 844 (Tenn. 2000). Insofar as possible, the intent of the legislature should be determined by the natural and ordinary meaning of the words used in the statute, and not by a construction that is forced or which limits or extends the meaning. *Id.* Section 34-1-105(a) provides that when a bond is required, that bond shall be "in an amount equal to the sum of the fair market value of all personal property and the amount of the anticipated income from all property, including the real property, for one (1) year." Clay undisputedly does not have personal property in excess of $10,000 or an income stream from property. Mr. Lovlace's child support payments are simply not "property" assets as envisioned by the statute.

Upon review of the record, we find no abuse of discretion in the trial court's determination to waive the requirement of a bond. We accordingly affirm on this issue.

Mr. Lovlace further submits the trial court erred by not requiring Ms. Lovlace to prepare and present a management plan and provide an accounting of expenses. He argues that Clay may not need the entire monthly support payments and, therefore, may accumulate assets. He further suggests, "[w]ithout an accounting, the effect of the trial court[']s order may be that the Ward (Clay) is supporting the conservator."

The Code provides, in pertinent part:

> (e)(1) Notwithstanding any provision of law to the contrary, no property management plan shall be required for the property of a minor or disabled person if such property does not exceed twenty-five thousand dollars ($25,000) in value, unless, on motion of any interested party, including the guardian ad litem, the court finds such plan would be in the best interest of such minor or disabled person.
> (2) If no plan is filed pursuant to the provisions of subdivision (e)(1), the fiduciary's first accounting and all subsequent accountings shall state how the funds of the estate are invested and how such fiduciary proposes such funds will be invested for the coming year.

Tenn. Code Ann. § 34-1-115(e)(2001).

It further stipulates:

(h) Accountings may be excused in the discretion of the court, if the court makes a finding based on the evidence presented at a hearing that waiver of the accountings would be appropriate, would be in the best interest of the minor or disabled person and that one (1) of the following exists:

(1) The fiduciary holds no property of the minor or disabled person and receives only fixed periodic payments, including, but not limited to, social security, veterans benefits or workers' compensation benefits, and the order appointing the fiduciary authorizes the fiduciary to apply the entire periodic payment to the needs of the minor or disabled person. The fiduciary holds no property of the minor or disabled person if the property of the minor or disabled person is:

(A) Deposited with the clerk and master or clerk of the court;

(B) Placed with a financial institution and the fiduciary and the financial institution enter into a written agreement, filed with the court, in which the financial institution agrees it will not permit the fiduciary to withdraw the principal without court approval; or

(2) The cost of the accounting would exceed twenty-five percent (25%) of the income produced by the property held by the fiduciary.

Tenn. Code Ann. § 34-1-111(h)(2001).

It is not disputed that at the time of trial, Clay did not have property in excess of $25,000. Additionally, the trial court found,

[b]ased upon the evidence, a waiver of annual accountings and inventory would be appropriate and in the best interest of the disabled person. The fiduciary is authorized to apply the entire periodic income to the needs of the disabled person. The fiduciary holds no property of the disabled person of any substantial value and the cost of an accounting would exceed twenty-five percent (25%) of the income produced by any property held by the fiduciary.

We affirm the court's determination to excuse an accounting in this case.

### Special Needs Trust

Mr. Lovlace contends the trial court erred by failing to consider evidence that Clay's resources could be expanded through a special needs trust. He argues that a special needs trust established pursuant to 42 U.S.C. § 1396p(d)(4)(A) would enhance Clay's access to other funds that are or may become available to him. He further submits that such a trust is in Clay's best interest because his and Ms. Lovlace's ability to support Clay will diminish and, one day, end.

-8-

Upon review of the record, we find that Mr. Lovlace failed to raise the issue of a special needs trust in the course of proceedings below. Mr. Lovlace first raised the issue in his motion to alter or amend, wherein he moved that the trial court's order "be altered to read that the support to be paid by Mr. Lovlace shall be paid into a special needs trust for Clay Lovlace and that Mr. Lovlace be authorized to apply for Social Security SSI on Clay's behalf." He subsequently moved the court to re-open the record and hear additional evidence regarding Clay's needs and the benefit of a special needs trust. The trial court denied these motions.

We review a trial court's determinations regarding motions to alter or amend and to re-open a record under an abuse of discretion standard. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003); *Robinson v. LeCorps*, 83 S.W.3d 718, 725 (Tenn. 2002). The trial court's denial of a motion to reopen the proof for additional evidence will not be disturbed unless it works an injustice. *Robinson*, 83 S.W.3d at 725.

Upon review of the record in this case, we cannot say the trial court abused its discretion by refusing to reopen the proof for evidence regarding a special needs trust. Moreover, the exhibits attached to Ms. Lovlace's response to Mr. Lovlace's motion to re-open reveal that a special needs trust was established but not funded by Mr. Lovlace and his current wife in April 1999, and that disinterested legal counsel advised counsel for both parties that payment of child support into such a trust would not be beneficial to Clay, might disqualify him from other benefits, and might be illegal if Mr. Lovlace's purpose was to terminate child support payments in order to make Clay eligible for government benefits.

We are not insensitive to the fact that Mr. Lovlace, like all of us, is not immortal and will not be forever able to support Clay. However, the trial court's refusal to alter the judgment and to re-open the proof does not foreclose other avenues available to Mr. Lovlace to provide for Clay's needs beyond his own lifetime. The trial court's determination works no injustice and we accordingly affirm its judgment.

### *Attorney's Fees*

We next address Mr. Lovlace's appeal of the award of attorney's fees to Ms. Lovlace. Paragraph 25 of the MDA entered into by the parties in 1993 provides:

> In the event it becomes reasonably necessary for either party to institute or defend legal proceedings to procure the enforcement of any provision of this Agreement, the successful party shall also be entitled to a judgment for reasonable expenses, including attorney's fees[] incurred in connection with the action.

The trial court awarded Ms. Lovlace attorney's fees of $45,426.40 pursuant to this MDA provision, Tennessee Code Annotated § 36-5-103(c), *Holtsinger v. Elrod*, No. E2001-00257-COA-R3-CV, 2002 WL 62984 (Tenn. Ct. App. Jan. 17, 2002) (*no perm. app. filed*), and *Monroe v. Robinson*, No. M2001-02218-COA-R3-CV, 2003 WL 132463 (Tenn. Ct. App. Jan. 16, 2003) (*no perm. app. filed*).

Mr. Lovlace asserts that the award of fees was error because the case was a conservatorship action and, taken as a whole, the matter concerned controversy over the structure of the conservatorship. Ms. Lovlace argues the trial court did not err because the issues tried involved matters of custody and support arising from Mr. Lovlace's attempts to modify the MDA.

Upon review of the record, we agree with the trial court that the conservatorship issues and issues within the purview of the MDA were "inseparable." Clearly, the MDA anticipates an award of attorney's fees incurred to defend and enforce the child support aspects of the action. Moreover, in the absence of contractual or statutory provisions, an award of attorney's fees is within the sound discretion of the trial court. *Reed v. Hamilton*, 39 S.W.3d 115, 119 (Tenn. Ct. App. 20002). In light of the entire record, we cannot say the trial court abused its discretion by awarding Ms. Lovlace her attorney's fees. We affirm.

We turn finally to Ms. Lovlace's request for attorney's fees on appeal. The determination of whether to award attorney's fees for an appeal is within our discretion. Attorney's fees are appropriate in child support cases when one parent must appeal or litigate a case in order to secure the child's financial well being. *Harris v. Harris*, 83 S.W.3d 137, 141 (Tenn. Ct. App. 2001). Although this appeal, like the action below, involves issues in the context of a conservatorship, the gravamen of this appeal is child support and whether Ms. Lovlace must account for that support. We award Ms. Lovlace her reasonable attorney's fees on appeal. This cause is remanded to the trial court for a determination of reasonable attorney's fees.

### *Holding*

In light of the foregoing, the judgment of the trial court is affirmed in all respects. We award Ms. Lovlace her attorney's fees on appeal and remand for a determination of reasonable attorney's fees. Costs of this appeal are taxed to the Appellant, Clayton O. Lovlace, Jr., and his surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE