Jackie **ROBINSON**

v.

Patrick J. **LeCORPS, M.D.**

Supreme Court of Tennessee,
at Nashville.

Sept. 5, 2002.

719

Mary A. Parker and Richard D. Piliponis, Nashville, Tennessee, for the appellant, Jackie Robinson.

C. Hayes Cooney, Nashville, Tennessee, for the appellee, Patrick J. LeCorps, M.D.

William B. Hubbard and Robyn E. Smith, Nashville, Tennessee, for Amicus Curiae, Tennessee Hospital Association.

William L. Penny and Jonathan D. Rose, Nashville, Tennessee, for Amicus Curiae, Hospital Alliance of Tennessee, Inc.

A. Yarnell Beatty, Nashville, Tennessee, for Amicus Curiae, Tennessee Medical Association.

David Kumatz, Nashville, Tennessee, for Amicus Curiae, Reciprocal of America.

R. Sandler Bailey, Jr., Memphis, Tennessee; Randall L. Kinnard, Nashville, Tennessee; T.J. Emison, Alamo, Tennessee; J.D. Lee and Dan C. Stanley, Knoxville, Tennessee; and John A. Day, Brentwood, Tennessee, for Amicus Curiae, The Tennessee Trial Lawyers Association.

## OPINION

E. RILEY ANDERSON, J., delivered the opinion of the court, in which FRANK F. DROWOTA, C.J., and ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

We granted review in this medical malpractice action to address whether the trial court erred by excluding expert medical testimony offered by the plaintiff and dismissing the complaint. The Court of Appeals affirmed. After reviewing the record and applicable authority, we conclude (1) that the plaintiff did not produce expert testimony to establish the standard of professional care in the community in which the defendant practiced or a similar community as required by Tenn.Code Ann. § 29–26–115(a)(1) (2000 & Supp.2001), and (2) that the trial court did not abuse its discretion in excluding the testimony and dismissing the complaint. We therefore affirm the Court of Appeal's judgment.

### *Background*

The plaintiff, Jackie Robinson, is an inmate housed in Riverbend Maximum Security Institute in Nashville, Tennessee.[1] On March 11, 1994, Robinson injured his left ankle and was diagnosed with an ankle sprain by a nurse practitioner in the prison infirmary. After the pain and swelling continued for three days, Robinson was treated in the infirmary by Dr. Frank Thomas; an x-ray of Robinson's ankle showed a fracture of the left lateral malleolus with distraction of the ankle mortise.

On March 15, 1994, Robinson was treated by the defendant, Dr. Patrick J. LeCorps,[2] an orthopedic surgeon with offices

---

1. Given the scant record on appeal in this case, our summary of background facts is taken from the complaint filed by the plaintiff, the answer filed by the defendant, and the deposition testimony of the plaintiff's expert witness.

2. Dr. LeCorps was under contract with the Tennessee Department of Correction to pro-

in Nashville, Tennessee. He set Robinson's ankle and applied a long leg cast. On April 5, 1994, Dr. LeCorps removed the long cast and replaced it with a short leg cast. Although Robinson complained that the ankle was painful, swollen, and turned at an awkward angle, Dr. LeCorps replied that the ankle would straighten out as it continued to heal. On April 19, 1994, four days after the short cast was removed, Robinson had pain in his ankle and a severe limp; Dr. LeCorps prescribed pain medication and said that the injury would improve in time. On May 3, 1994, and July 5, 1994, Dr. LeCorps again prescribed pain medication and told Robinson the pain would decrease.

In September of 1994, Robinson was treated by Dr. John Lamb. An x-ray revealed a past fracture of the left lateral malleolus with a partial rupture of the deltoid ligament and subluxation of the talus laterally. Dr. Lamb prescribed pain medication and a modified shoe insole. In December of 1994, Dr. William Bacon diagnosed post-traumatic arthritis in Robinson's left ankle. Nearly one year later, in November of 1995, Dr. Bacon performed ankle fusion on Robinson.

Robinson filed this medical malpractice action alleging that Dr. LeCorps was negligent and that the negligence resulted in permanent injury and ankle fusion surgery. In an evidentiary deposition for trial, Robinson's expert witness, Dr. William E. Kennedy,[3] from Johnson City, Tennessee, testified that he had reviewed the medical records and x-rays regarding Robinson's ankle and that Dr. LeCorps initially acted appropriately in performing a

closed reduction of the fracture by setting the ankle and applying a cast. Dr. Kennedy further testified, however, that x-rays showed widening of the ankle mortise on April 5, 1994, and that surgery was the only treatment option at that point.

When Dr. Kennedy was asked about the standard of care applicable to an orthopaedic surgeon in Nashville, Tennessee, counsel for the defendant, Dr. LeCorps, objected on the ground that Dr. Kennedy's testimony in a prior discovery deposition had been "based on the national standard." The following exchange then occurred:

Q. (Plaintiff's Counsel). Do you consider the national standard to be the same as the recognized standard of acceptable professional practice as it would be in Nashville, Tennessee?

[Defendant's Counsel]. Same objection, based on his prior deposition.

A. Yes.

Q. What do you base that on, that opinion?

A. Nashville is certainly recognized as a regional medical center, and communication and training are such in our country today that the two standards, locally, as held in Nashville and for that matter where I have practiced in Johnson City, would be expected to be the same, and also the same as a national standard.

There is no differentiation recognized in our profession of one locality as opposed to the other, certain localities comparable with Nashville and Johnson City, Tennessee, on the part of any of our national organizations in-

vide orthopaedic services to inmates at Riverbend.

**3.** The deposition indicated that Dr. Kennedy was board-certified by the American Board of Orthopaedic Surgery in 1972 and had a private practice in orthopaedic surgery from

1972 to 1998 in Johnson City, Tennessee. Although he retired from practice in 1998, Dr. Kennedy worked part-time performing independent medical examinations and providing related depositions and testimony.

cluding the American Board of Orthopaedic Surgery.

All of us, whether we are from Johnson City or from Nashville, would stand the same test and would be expected to have the same knowledge and to practice in very similar fashions by the American Board of Orthopaedic Surgery.

[Defendant's Counsel].    Same objection.

The trial court granted the defendant's motion to exclude the expert testimony after finding that it was based on a national standard and did not establish the standard of care for the community in which Dr. LeCorps practiced medicine, *i.e.*, Nashville, or a similar community as required in a malpractice action under Tenn. Code Ann. § 29–26–115(a)(1) (2000 & Supp.2001).[4] The trial court also refused to allow the plaintiff to introduce the testimony of Dr. Kennedy at trial and dismissed the complaint. The Court of Appeals affirmed the trial court's judgment.

We granted this appeal.

### Analysis

#### Standard of Care

The plaintiff, Jackie Robinson, contends that the trial court erred in finding that he did not introduce expert testimony to establish the recognized standard of professional care in the community in which the defendant practiced or in a similar community as required by Tenn.Code Ann. § 29–26–115(a)(1). Moreover, Robinson argues that this Court should enlarge the scope of the "locality rule" as expressed in the statute by adopting a national standard of care that would reflect the modern changes and improvements in the practice of medicine, medical technology, and communication.[5]

The defendant, Dr. LeCorps, maintains that the trial court applied the "locality rule" as required by the statute and properly found that Robinson failed to meet his required burden.

▮▮▮▮ Our review of the trial court's action requires an examination of the medical malpractice statute, Tenn.Code Ann. § 29–26–115, and we will begin by summarizing familiar principles of statutory construction. The purpose of statutory construction is "to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Owens v. State*, 908 S.W.2d 923, 926 (Tenn.1995) (citation omitted). Courts must restrict their review "to the natural and ordinary meaning of the language used by the legislature in the statute, unless an ambiguity requires resort elsewhere to ascertain legislative intent." *Browder v. Morris*, 975 S.W.2d 308, 311 (Tenn.1998) (citing *Austin v. Memphis Pub. Co.*, 655 S.W.2d 146, 148 (Tenn.1983)). The construction of a statute is a question of law subject to *de novo* review without a presumption of correct-

---

4. We note that there is no evidence in the limited record on appeal regarding whether Dr. LeCorps was board certified in orthopaedic surgery.

5. Robinson argues that a national standard of care has been embraced by a majority of jurisdictions and is particularly appropriate in cases involving defendants who are board-certified in a specialized area. The Tennessee *Medical* Association, Tennessee Hospital Association, Hospital Alliance of Tennessee, and Reciprocal of America, participating in this case as *amicus curiae*, oppose the adoption of a national standard and vigorously dispute Robinson's claim that a majority of jurisdictions have applied such a standard. The *amici* also contend that any change in the locality rule as set forth in Tenn.Code Ann. § 29–26–115(a)(1) must come from the legislature and that there is no evidence that a national standard exists.

ness. *Ivey v. Trans Global Gas & Oil*, 3 S.W.3d 441, 446 (Tenn.1999).

With these principles in mind, we turn to the statutory provisions under review in this case:

(a) In a malpractice action, the claimant shall have the burden of proving ...:

·(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices *in the community in which the defendant practices or in a similar community* at the time the alleged injury or wrongful action occurred.

Tenn.Code Ann. § 29–26–115(a)(1) (emphasis added).[6]

The plain and ordinary language in § 115(a)(1) embraces the so-called "locality rule," which requires that the standard of professional care must be based upon "the community in which the defendant practices or in a similar community." As this Court has said:

This geographic component to the relevant standard of care evolved out of a recognition that medical customs or practices varied depending on the particular area in which the physician practiced.... Traditionally, the relevant geographic area was strictly defined. The plaintiff was required to introduce evidence concerning the standard of care in the strict locality where the defendant worked.

*Sutphin v. Platt*, 720 S.W.2d 455, 457 (Tenn.1986) (citation omitted). Although the *Sutphin* Court also observed that the phrase "or in a similar community," may reflect a "modern trend towards the national standardization of medical practices," *id.*, it nonetheless clarified the legislative intent and purpose as follows:

There is an undeniable legitimate state interest in assuring that doctors charged with negligence in this State receive a fair assessment of their conduct in relation to community standards similar to the one in which they practice.

*Id.* at 458; *see also Cardwell v. Bechtol*, 724 S.W.2d 739, 754 (Tenn.1987).

■ Despite the clear statutory language and evidence of legislative intent, Robinson asserts that the locality rule in Tenn.Code Ann. § 29–26–115(a)(1) should be enlarged or broadened by adopting a national standard of professional care for all malpractice actions, malpractice actions involving physicians who are board-certified in a particular area, or malpractice actions involving a specific treatment issue or area of medicine. There is no statutory language or other evidence of· legislative intent, however, that would support such an interpretation.

■ The legislature, which is presumed to know of its enactments and the state of the law, has not amended or supplemented the statutory language in any way that would broaden the locality rule or support such a sweeping change in the standard of care in malpractice actions. Moreover, in the absence of applicable statutory language, we decline to adopt the plaintiff's interpretation based either on policy arguments or alleged evidence of the existence

---

**6.** In addition, the statute provides that "[n]o person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a), *unless the person was licensed to practice in the state or a contiguous bordering state* a profession or specialty which would make the person's expert testimony relevant to the issues in the case *and had practiced this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred. ...*" (Emphasis added). Tenn.Code Ann. § 29–26–115(b).

of a national standard of care in the medical community that are better addressed to the legislature.

This Court is mindful, however, that in many instances the national standard would indeed be representative of the local standard, especially for board certified specialists. Although such issues are properly left to the discretion of the legislature, we encourage the General Assembly to reconsider the current statutory framework of the locality rule. However, until such legislative action, we believe that the legislative intent and purpose of Tenn.Code Ann. § 29–26–115(a)(1), as presently derived from the statutory language, continues to be that the conduct of doctors in this State is assessed in accordance with the standard of professional care in the community in which they practice or one similar to it.[7]

A plaintiff in a malpractice action, therefore, must produce expert medical evidence to establish the standard of professional care in the community in which a defendant practices or in a similar community. A medical expert relied upon by a plaintiff must have knowledge of the standard of professional care in the defendant's applicable community or knowledge of the standard of professional care in a community *that is shown to be similar* to the defendant's community. While an expert's discussion of the applicability of a national standard does not require exclusion of the testimony, such evidence may not substitute for evidence that first establishes the requirements of Tenn.Code Ann. § 29–26–115(a)(1).

Our interpretation of the statute is consistent with prior Court of Appeals' decisions, including *Mabon v. Jackson–Madison County Gen. Hosp.,* 968 S.W.2d 826 (Tenn.Ct.App.1997). There, the plaintiff's expert stated by affidavit that he was "familiar with the recognized standard of acceptable medical practice ... in an area such as Jackson, Tennessee ..., and that the standard of care in Jackson ... would be comparable to the cities and facilities at which he had practiced medicine." The expert later elaborated by testifying that "there is a national standard of care for physicians...." *Id.* The Court of Appeals concluded that the plaintiff failed to meet the burden under Tenn.Code Ann. § 29–26–115(a)(1):

> [W]e cannot accept Dr. Shane's bare assertion that the standard of care in Jackson is the same nationwide and that the level of care with which Dr. Shane is familiar *should* have been available in Jackson.... Dr. Shane simply failed to establish that he had knowledge of the requisite standard of care in Jackson, Tennessee or in a similar community.

*Id.* at 831.

Accordingly, in applying Tenn.Code Ann. § 29–26–115(a)(1) to the scant evidence in this case, it is clear that Dr. Kennedy's testimony did not establish the standard of professional care in Nashville, Tennessee, or in a similar community. Although Dr. Kennedy was licensed in Tennessee, practiced in Johnson City, Tennessee, and was board certified in orthopaedic surgery, he testified only that the applicable standard of care in this case "would be expected" to be the same as the national standard of care and that "[t]here is no differentiation recognized in ... one locality as opposed to the other, certain localities comparable with Nashville...." Dr. Kennedy also stated that orthopaedic surgeons "would stand the same test and would be expected to have the same knowledge and to practice in very similar

---

7. This purpose is further evident in the requirements of Tenn.Code Ann. § 29–26– 115(b), which must be construed *in para materia* with Tenn.Code Ann. § 29–26–115(a).

fashions by the American Board of Orthopaedic Surgeons." He did not, however, relate the basis for his knowledge of the standard of care in Nashville or indicate why the Nashville medical community was similar to, and thus had the same standard of professional care as, the community with which Dr. Kennedy was familiar.

We therefore agree with the Court of Appeals' conclusion that the trial court did not abuse its discretion by excluding the deposition testimony. *See McDaniel v. CSX Transp., Inc.,* 955 S.W.2d 257, 263 (Tenn.1997) (holding that the trial court has broad discretion in determining the admissibility, qualifications, relevancy and competency of expert testimony).

### *Dismissal of Complaint*

■ Robinson next argues that he should have been permitted to present the in-court testimony of Dr. Kennedy to expound upon his deposition testimony with regard to the standard of care and that the trial court erred in dismissing the action. The defendant argues that the trial court did not abuse its discretion in refusing to hear additional proof under the circumstances of this case.

■ This Court has stated that it is "within the discretion of the trial judge to decide whether to reopen the proof for further evidence, and the decision of the trial judge ... will not be set aside unless there is a showing that an injustice has been done." *Simpson v. Frontier Community Credit Union,* 810 S.W.2d 147, 149 (Tenn.1991) (quoting *Higgins v. Steide,* 47 Tenn.App. 42, 335 S.W.2d 533 (1959)). With these standards in mind we will review the facts and circumstances of this case.

As noted by the Court of Appeals in the present case, Robinson was aware of the required elements of a malpractice action under Tenn.Code Ann. § 29–26–115(a) and (b) and also knew that the defendant objected to the testimony of Dr. Kennedy with regard to the standard of professional care in a discovery deposition. Moreover, counsel for Dr. LeCorps objected and cited this specific ground on two occasions during the evidentiary deposition of Dr. Kennedy. Despite these specific objections, Robinson did not ask Dr. Kennedy to clarify his testimony with respect to the applicable standard of care and did not present any other expert witnesses to establish an appropriate standard. In addition, Robinson made no showing of how Dr. Kennedy's new testimony would differ or clarify the standard of professional care in accordance with the statutory requirements. We therefore agree with the Court of Appeals' conclusion that the trial court did not err in refusing to allow Dr. Kennedy to testify and in dismissing the action.

### *Conclusion*

After reviewing the record and applicable authority, we conclude that the plaintiff did not produce expert testimony to establish the standard of professional care in the community in which the defendant practiced or in a similar community as required by the "locality rule" in Tenn. Code Ann. § 29–26–115, and that the trial court did not abuse its discretion in excluding the testimony and dismissing the complaint. We therefore affirm the judgment of the Court of Appeals. Costs of the appeal are taxed to the plaintiff, Jackie Robinson, for which execution shall issue.