# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
October 6, 2010 Session

## DONNA FAYE SHIPLEY ET AL. v. ROBIN WILLIAMS

**Appeal by Permission from the Court of Appeals, Middle Section**
**Circuit Court for Davidson County**
**No. 02C-3204      Barbara N. Haynes, Judge**

**No. M2007-01217-SC-R11-CV - Filed August 11, 2011**

WILLIAM C. KOCH, JR., J., concurring in part and dissenting in part.

We originally granted the application for permission to appeal in this case to address a question regarding summary judgments in medical malpractice cases that was left unanswered in *Hannan v. Alltel Publishing Co.*, 270 S.W.3d 1 (Tenn. 2008). That question is whether a defendant in a medical malpractice case who does not present evidence that his or her conduct complied with the applicable standard of care is entitled to a summary judgment when he or she demonstrates that the expert witness or witnesses the plaintiff plans to present at trial do not satisfy the requirements of Tenn. Code Ann. § 29-26-115 (Supp. 2010).[1]

In this case, both the trial court and the Court of Appeals, using rules and principles that have traditionally been employed in cases of this sort, determined that the plaintiff's two "standard of care" experts did not satisfy the requirements of Tenn. Code Ann. § 29-26-115. The Court now reverses those decisions, but not on the ground that the defendant did not present evidence that her conduct was consistent with the standard of care. The Court's decision rests on (1) a substantial alteration of the standard of review of summary judgments based on the inadmissibility of evidence relating to an essential element of the nonmoving party's case and (2) a significant relaxation of the "locality rule" in Tenn. Code Ann. § 29-26-115.

---

[1]Professor Judy M. Cornett addressed this very circumstance in her recent article defending this Court's decision in *Hannan v. Alltel Publishing Co.*, 270 S.W.3d 1 (Tenn. 2008). Judy M. Cornett, *Trick or Treat? Summary Judgment in Tennessee After* Hannan v. Alltel Publishing Co., 77 Tenn. L. Rev. 305, 342-43 (2010).

I find no legal or logical basis for changing the standard of review or for relaxing the requirements of Tenn. Code Ann. § 29-26-115. The motion for summary judgment at issue in this case was filed four years after the complaint was filed. By that time, the plaintiff had been given over two years to identify qualified "standard of care" experts, the discovery of the parties and the experts had been completed, and the case had been set for trial. Reviewing this record based on the standards traditionally used to review cases of this sort, I would find that both of the plaintiff's experts failed to satisfy the requirements of the locality rule and thus that the defendant demonstrated that she was entitled to a judgment as a matter of law. By establishing that the plaintiff's standard of care experts were not competent to testify, she affirmatively negated an essential element of the plaintiff's case.

## I.

In mid-January 2001, Donna Faye Shipley underwent emergency surgery at Summit Medical Center in Nashville for a ruptured colon. The surgery was performed by Dr. Robin Williams, a general surgeon practicing in Nashville. Part of the procedure included the construction of a temporary ileostomy.[2] During the months following her surgery, Ms. Shipley returned to the hospital several times because of infections associated with the ileostomy. Ms. Shipley remained under the care of Dr. Williams.

On Saturday, November 17, 2001, Ms. Shipley telephoned Dr. Williams complaining of abdominal pain and a sore throat. Dr. Williams instructed Ms. Shipley to make an office appointment for Tuesday, November 20, 2001, and to contact her before Tuesday if the pain worsened or if she developed a fever. Ms. Shipley telephoned Dr. Williams on Sunday, November 18, 2001, complaining of increased pain and a 102° fever. Dr. Williams instructed Ms. Shipley to go to the emergency room at Summit Medical Center and then alerted the emergency room staff that Ms. Shipley was en route.

Dr. Leonard A. Walker, III examined Ms. Shipley in the emergency room. During Ms. Shipley's lengthy stay in the emergency room, Dr. Walker ordered a number of tests, including a CT scan and a chest X-ray. Dr. Walker ruled out strep throat and pneumonia and saw no signs of sepsis. However, because Ms. Shipley appeared to be dehydrated, Dr. Walker ordered IV fluids. Even though he was unable to formulate a specific diagnosis, Dr. Walker was concerned that Ms. Shipley "was developing some type of intra-abdominal problem" because of her abdominal pain and elevated white blood cell count.

---

[2]An ileostomy is a surgically created opening that connects the small intestine to the outside wall of the abdomen. It provides an exit from the small intestine to the surface of the patient's skin that permits the collection and elimination of waste in an individually fitted drainable pouch that is worn at all times. The pouch is generally emptied five to eight times a day.

Dr. Walker talked with Dr. Williams by telephone while Ms. Shipley was in the emergency room. Dr. Walker passed along the results of the laboratory tests, the CT scan, and the X-ray and also gave Dr. Williams his impression of Ms. Shipley's condition based on his examination. When Dr. Walker stated that Ms. Shipley should be re-examined, Dr. Williams told him that she would be happy to see Ms. Shipley in her office. Because Ms. Shipley was dehydrated, Dr. Williams asked Dr. Walker to order a second bag of IV fluids before releasing her. Dr. Walker released Ms. Shipley from the emergency room after she received the additional IV fluids. He instructed her to rest, drink fluids vigorously, stay on a clear liquid diet for ten to twelve hours, and to contact Dr. Williams on Monday morning to arrange for an appointment.

Dr. Williams did not customarily see patients in her office on Monday. Accordingly, she understood that she would see Ms. Shipley in her office on Tuesday, November 20, 2001. However, for some reason not clearly explained in this record, Dr. Williams's office made arrangements for Ms. Shipley to see her primary care physician on Wednesday, November 21, 2001. Unbeknownst to Dr. Williams, Ms. Shipley's primary care physician contracted meningitis and could not see Ms. Shipley as planned. On the evening of November 21, 2001, Ms. Shipley returned to the Summit Medical Center emergency room. She was admitted to the hospital with sepsis and pneumonia.

On November 7, 2002, Ms. Shipley and her husband filed a medical malpractice suit in the Circuit Court for Davidson County against Drs. Williams and Walker and Summit Medical Center. They alleged that the physicians were negligent because they failed to admit Ms. Shipley to the hospital on November 18, 2001, and because Ms. Shipley "[got] the run around for several days" before she returned to the hospital on November 21, 2001. Ms. Shipley sought $3,000,000 in damages, and Mr. Shipley sought $500,000 in damages "for the loss of services and consortium of his wife."

The Shipleys' claims against Dr. Walker and Summit Medical Center fell by the wayside in relatively short order,[3] and the case continued against Dr. Williams alone. The Shipleys deposed Dr. Williams on October 22, 2003. Less than one month later, on November 17, 2003, the trial court entered a case management and scheduling order directing the Shipleys to disclose their expert witnesses by February 2, 2004.[4] On February 23, 2004, three weeks past the deadline, the Shipleys filed Tenn. R. Civ. P. 26.02(4) disclosures identifying Dr. Ronald A. Shaw, an emergency room physician practicing in Montgomery, Alabama, and Dr. Stephen K. Rerych, a general surgeon practicing in Asheville, North

---

[3]On April 30, 2003, the trial court dismissed Summit Medical Center without opposition. Dr. Walker was dismissed as a party on January 8, 2004.

[4]The order also directed Dr. Williams to disclose her expert witnesses by April 5, 2004, and directed that all discovery depositions be taken by September 17, 2004. The deadline for taking discovery depositions was later extended to September 15, 2005.

Carolina, as their "standard of care" experts. They also disclosed Dr. Gerald R. Donowitz, an internist with a sub-speciality in infectious diseases practicing in Charlottesville, Virginia, as their "causation" expert.[5]

The trial court later extended the Shipleys' deadline to disclose experts to January 15, 2005 and Dr. Williams's disclosure deadline to March 1, 2005. In an effort to meet the deposition deadline, Dr. Donowitz was deposed on July 20, 2005. Dr. Rerych's deposition was taken on January 17, 2006, and Dr. Shaw's deposition was taken on February 27, 2006.

On April 10, 2006, the trial court entered an agreed order setting the case for trial on October 30, 2006.[6] On June 22, 2006, Dr. Williams filed a motion for partial summary judgment seeking dismissal of the claim that she had been negligent for failing to admit Ms. Shipley to the hospital on November 18, 2001. The trial court entered an order on September 1, 2006, granting the motion and dismissing this claim.

On September 11, 2006, the trial court entered a case management and scheduling order requiring all dispositive motions to be docketed to be heard on or before January 26, 2007. Accordingly, on December 1, 2006, Dr. Williams filed a "motion for summary judgment to exclude Stephen Rerych, M.D[.] and Ronald Shaw, M.D." (capitalization omitted). This motion was accompanied by a statement of undisputed facts and a memorandum of law and was set to be heard on January 12, 2007. In their response to the motion, the Shipleys admitted the facts in Dr. Williams's statement of undisputed facts for the purpose of the motion.

The trial court heard Dr. Williams's motion for summary judgment on January 17, 2007. On February 6, 2007, the court entered an order granting summary judgment. The order stated that Dr. Williams's statement of undisputed acts would be deemed admitted because it was unopposed and that the "Plaintiff's testifying experts . . . do not meet the requirements of Tenn. Code Ann. § 29-26-115 and will not substantially assist the trier of fact pursuant to Tenn. R. Evid. 702 and 703."[7]

_____

[5]The Shipleys' Tenn. R. Civ. P. 26.02(4) disclosure regarding Dr. Donowitz is in the record. It states that "Dr. Donowitz will not be testifying as to the specific standard of care violations that apply in this case, i.e., as to the respective duties of the ER physician and the general surgeon." During Dr. Donowitz's deposition on July 20, 2005, the Shipleys' lead counsel stated "I certainly do not intend to ask him whether or not [Dr.] Williams violated the standard of care." When asked "are you saying you're not offering him [Dr. Donowitz] for any standard of care issues whatsoever?," counsel responded "Exactly."

[6]Three months later, on July 14, 2006, the trial date was moved from October 30, 2006 to February 26, 2007 "due to a conflict in Plaintiff's counsel's calendar."

[7]The Shipleys' counsel prepared a competing order which the trial court signed and filed on February 21, 2007. However, in an order filed on March 6, 2007, the trial stated that the entry of the February 21,

(continued...)

Ms. Shipley filed a Tenn. R. Civ. P. 59.04 motion to alter or amend on March 8, 2007. Attached to this motion were the affidavits of two new "standard of care" experts.[8] She also complained that the trial court had not explained its reasons for granting the summary judgment and requested the trial court to set a new trial date.

On May 10, 2007, the trial court filed "findings of fact and conclusions of law." (capitalization omitted). The court explained the basis for its February 6, 2007 order by pointing out that "Dr. Stephen Rerych[] does not satisfy the requirements of Tenn. Code Ann. § 29-26-115. Dr. Rerych did not demonstrate familiarity with the standard of care for general surgeons in Nashville, Davidson County, Tennessee. Nor did he demonstrate that Ash[e]ville, North Carolina is a similar community to Nashville, Tennessee." With regard to Dr. Ronald Shaw, the trial court explained that "Dr. Ronald Shaw[] does not satisfy the requirements of Tenn. Code Ann. § 29-26-115. Dr. Ronald Shaw does not practice in a specialty that is relevant to the standard of care issues in this case." The trial court also denied Ms. Shipley's motion to alter or amend.

Ms. Shipley filed a timely notice of appeal. The Court of Appeals filed its opinion on August 14, 2009. *Shipley v. Williams*, No. M2007-01217-COA-R3-CV, 2009 WL 2486199 (Tenn. Ct. App. Aug. 14, 2009). The court affirmed the trial court's decision that Dr. Shaw was not qualified to give an opinion regarding Dr. Williams's standard of care. *Shipley v. Williams*, 2009 WL 2486199, at *5. It also affirmed the trial court's decision that Dr. Rerych could not render a standard of care opinion because he had failed to prove that the medical communities of Asheville, North Carolina and Nashville, Tennessee are similar. *Shipley v. Williams*, 2009 WL 2486199, at *5.

Notwithstanding these conclusions, the Court of Appeals reversed the trial court's summary judgment. The court decided that the claim based on Dr. Williams's failure to admit Ms. Shipley to the hospital on November 18, 2001 should not have been dismissed because Dr. Williams had relied solely on Dr. Rerych's testimony that the trial court later found to be inadmissible. The court reasoned that without Dr. Rerych's testimony, Dr. Williams had failed to present proof negating an essential element of Ms. Shipley's "failure to admit" claim. *Shipley v. Williams*, 2009 WL 2486199, at *6.

---

[7](...continued)
2007 order was erroneous.

[8]The first affidavit was signed by Dr. Carl R. Doerhoff, a general surgeon practicing in Jefferson City, Missouri. The second affidavit was signed by Dr. Donowitz who had earlier been disclosed as the Shipleys' "causation" expert. Despite the express limitations that they had placed on Dr. Donowitz's testimony, Ms. Shipley now desired to present him as a "standard of care" expert.

The intermediate appellate court then turned its attention to Ms. Shipley's remaining negligence claims.[9] The court determined that Dr. Williams was not entitled to a summary judgment on these claims because she had failed to negate an essential element of Ms. Shipley's case and, therefore, that the burden never shifted back to Ms. Shipley to demonstrate the existence of a dispute of material fact warranting a trial. The court based its decision on its conclusions that (1) the excerpts of Dr. Williams's deposition filed in support of her summary judgment did not address her own familiarity with the applicable standard of care and whether she complied with it and (2) the affidavit and deposition excerpts of Dr. Walker likewise did not address Dr. Williams's standard of care and whether she complied with it. *Shipley v. Williams*, 2009 WL 2486199, at *7.

In her Tenn. R. App. P. 11 application for permission to appeal, Dr. Williams asserted (1) that the Court of Appeals had erred by concluding that she had relied on the opinions of Drs. Rerych and Shaw to support her motion for summary judgment and (2) that the court had also erred by failing to find that, by disqualifying Ms. Shipley's two "standard of care experts after the deadline for disclosing experts had passed," she had successfully shown that Ms. Shipley could not prove an essential element of her claim at trial. In her answer to Dr. Williams's Tenn. R. App. P. 11 application, Ms. Shipley insisted that the Court of Appeals had erred by failing to consider the testimony of Drs. Rerych and Shaw in a light most favorable to her.

## II.

The principles governing summary judgment practice in Tennessee have been under renewed scrutiny of late. As a result, the Court has significantly refocused the burden of persuasion standards, as well as the requirements that must be met before a summary judgment can be granted. These judicially wrought changes have marginalized the utility of summary judgment proceedings as "screening device[s] . . . to identify those cases that are not trial-worthy."[10]

---

[9]The court characterized these claims as (1) negligent failure to properly assess her condition, (2) negligent failure to provide necessary medical treatment, (3) negligent failure to have her properly referred to another doctor, and (4) negligent failure to follow up on her progress. *Shipley v. Williams*, 2009 WL 2486199, at *6.

[10]*See generally* Cornett, 77 Tenn. L. Rev. at 337 (discussing the challenges of properly balancing summary judgment). This Court has likewise noted that summary judgment proceedings "enable the courts to pierce the pleadings to determine whether the case justifies the time and expense of a trial." *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). In its official comment to Tenn. R. Civ. P. 56, this Court's Advisory Commission on the Rules of Practice and Procedure emphasizes that the rule was intended to accelerate litigation, remove insubstantial issues, and confine trials to only genuine issues. Tenn. R. Civ. P. 56, advisory comm'n cmt. Similarly, the authors of a definitive treatise on civil procedure have stated that summary judgments provide the parties with expeditious justice by winnowing out unfounded claims,

(continued...)

The Court's recent decisions have not, however, displaced the requirement in Tenn. R. Civ. P. 56.06[11] that the evidence used to support or to oppose a motion for summary judgment must be admissible. *Cox v. M.A. Primary & Urgent Care Clinic*, 313 S.W.3d 240, 247 n.5 (Tenn. 2010); *Green v. Green*, 293 S.W.3d 493, 513 (Tenn. 2009); *Byrd v. Hall*, 847 S.W.2d at 215-16. At the summary judgment stage, admissibility determinations focus principally on the content or substance of the evidence, not necessarily its form.[12] *Byrd v. Hall*, 847 S.W.2d at 215-16; *Roy v. City of Harriman*, 279 S.W.3d 296, 299 (Tenn. Ct. App. 2008); *Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 45 S.W.3d 588, 598 (Tenn. Ct. App. 2001). To be admissible, evidence at the summary judgment stage must satisfy the requirements of the Tennessee Rules of Evidence, as well as any other requirements controlling the admissibility of particular types of evidence. Thus, evidence that would be substantively inadmissible at trial would likewise be inadmissible at the summary judgment stage.

Despite its protestations to the contrary, the Court's opinion in this case, subtly but significantly, changes the standard used to review decisions regarding the admissibility of evidence used to support or to oppose summary judgment motions. Because decisions regarding the admissibility of evidence have customarily been viewed as discretionary, the appellate courts have reviewed them – no matter the context – using the deferential "abuse-of-discretion" standard. *See generally Sanford v. Waugh & Co.*, 328 S.W.3d 836, 847 (Tenn. 2010); *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004). Even though we have used this standard to review decisions involving the admissibility of evidence in summary judgment proceedings, *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 87 (Tenn. 2008), the Court has now diluted this standard by requiring courts to view the evidence in the light most favorable to the nonmoving party when deciding whether the nonmoving party's evidence is admissible. The liberal construction of the evidence principle favoring nonmoving parties was never intended to apply to threshold decisions regarding the admissibility of the evidence.

In summary judgment proceedings, it is necessary to distinguish between questions involving the admissibility of evidence and questions involving the weight of the evidence.

---

[10](...continued)
specious denials, and sham defenses. 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2712, at 198 (3d ed. 1998).

[11]Tenn. R. Civ. P. 56.06 requires that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

[12]For example, parties commonly use affidavits and depositions to support or to oppose summary judgment motions. The fact that the evidence is in this form does not render the evidence inadmissible for summary judgment purposes. However, regardless of its form, the evidence could be excluded if it is found to be substantively inadmissible.

A summary judgment proceeding is not a substitute for a trial of disputed factual issues. *CAO Holdings, Inc. v. Trost*, 333 S.W.3d 73, 82 (Tenn. 2010); *Fruge v. Doe*, 952 S.W.2d 408, 410 (Tenn. 1997). Because resolving factual disputes and weighing the evidence are the fact-finder's prerogative, the courts may not weigh the evidence or resolve factual disputes in a summary judgment proceeding. *Downs ex rel. Downs v. Bush*, 263 S.W.3d 812, 815 (Tenn. 2008); *Teter v. Republic Parking Sys., Inc.*, 181 S.W.3d 330, 337 (Tenn. 2005); *Rollins v. Winn Dixie*, 780 S.W.2d 765, 767 (Tenn. Ct. App. 1989).

On the other hand, issues involving the admissibility of evidence are not questions addressed to the jury or the fact-finder. These questions are addressed to the court. *State v. Housler*, 193 S.W.3d 476, 489 (Tenn. 2006); *Currier v. Bank of Louisville*, 45 Tenn. (5 Cold.) 460, 462 (1868); *Godbee v. Dimick*, 213 S.W.3d 865, 882 (Tenn. Ct. App. 2006); *see also* Tenn. R. Evid. 104(a). In this regard, the courts protect the integrity of the fact-finding process by acting as gatekeepers to assure that the fact-finder's decision is based only on admissible evidence. *State v. Scott*, 275 S.W.3d 395, 401 (Tenn. 2009); *Johnson v. John Hancock Funds*, 217 S.W.3d 414, 425 (Tenn. Ct. App. 2006).

An overwhelming majority of federal and state courts recognize that in summary judgment proceedings, issues involving the admissibility of evidence are separate and distinct from issues involving the existence of genuine issues of fact sufficient to preclude a summary judgment. *Gen. Electric Co. v. Joiner*, 522 U.S. 139, 142-43 (1997); *Suhadolnik v. Pressman*, ___ P.3d ___, ___, 2011 WL 2023303, at *2 (Idaho 2011) (quoting *Dulaney v. St. Alphonsus Reg'l Med. Ctr.*, 46 P.3d 816, 819 (Idaho 2002). Accordingly, they use the "abuse-of-discretion" standard when reviewing decisions involving the admissibility of evidence in the context of a summary judgment proceeding.[13] At least until today, Tennessee's courts have followed the majority rule.[14]

---

[13]*See, e.g.*, *Gen. Electric Co. v. Joiner*, 522 U.S. at 142-43; *Carnes v. Superior Court*, 23 Cal. Rptr. 3d 915, 919 (Ct. App. 2005); *Barlow v. Palmer*, 898 A.2d 835, 837 (Conn. App. Ct. 2008); *Hagan v. Goody's Family Clothing, Inc.*, 490 S.E.2d 107, 109 (Ga. Ct. App. 1997); *J-U-B Eng'rs, Inc. v. Sec. Ins. Co. of Hartford*, 193 P.3d 858, 861-62 (Idaho 2008); *Starks Mech., Inc. v. New Albany-Floyd Cnty. Consol. Sch. Corp.*, 854 N.E.2d 936, 939 (Ind. Ct. App. 2006); *Carrier v. City of Amite*, 6 So. 3d 893, 897 (La. Ct. App. 2009); *Injured Workers' Ins. Fund v. Orient Express Delivery Serv., Inc.*, 988 A.2d 1120, 1127-29 (Md. Spec. Ct. App. 2010); *Glenn v. Overhead Door Corp.*, 2004-CA-01248-COA (¶ 12), 935 So. 2d 1074, 1079 (Miss. Ct. App. 2006); *Richards v. Missoula Cnty.*, 2009 MT 453, ¶ 39, 223 P.3d 878, 883; *HSI North Carolina, LLC v. Diversified Fire Prot. of Wilmington, Inc.*, 611 S.E.2d 224, 228 (N.C. Ct. App. 2005); *Andrushchenko v. Silchuk*, 2008 SD 8, ¶¶ 8-20, 744 N.W.2d 850, 854-57; *United Blood Servs. v. Longoria*, 938 S.W.2d 29, 30 (Tex. 1997); *Allen v. Asbestos Corp.*, 157 P.3d 406, 408-09 (Wash. Ct. App. 2007); *San Francisco v. Wendy's Int'l, Inc.*, 656 S.E.2d 485, 491 (W. Va. 2007); *Palisades Collection LLC v. Kalal*, 2010 WI App. 38, ¶ 10, 781 N.W.2d 503, 507; *see generally White v. Woods*, 2009 WY 29A, ¶ 18, 208 P.3d 597, 602-03.

[14]*See, e.g.*, *Martin v. Norfolk S. Ry.*, 271 S.W.3d at 87, *Jacobs v. Nashville Ear, Nose & Throat Clinic*, 338 S.W.3d 466, 476 (Tenn. Ct. App. 2010); *Johnson v. John Hancock Funds*, 217 S.W.3d at 425-26;

(continued...)

Because only admissible evidence can be used to support or to oppose a summary judgment motion, a trial court's first order of business is to resolve all challenges to the admissibility of evidence. *See Cox v. M.A. Primary & Urgent Care Clinic*, 313 S.W.3d at 261 (holding that summary judgment for the defendants in a medical malpractice case was appropriate where the plaintiff's sole expert was not competent to testify about the standard of care). Evidence found to be inadmissible cannot be considered. However, the evidence found to be admissible may be considered in the light most favorable to the nonmoving party[15] when the trial court is deciding whether genuine issues of material fact exist or whether the party seeking the summary judgment is entitled to a judgment as a matter of law. The principle requiring liberal construction of the evidence in favor of the nonmoving party applies only to evidence that has been found to be admissible. *Bozzi v. Nordstrom, Inc.*, 111 Cal. Rptr. 3d 910, 915 (Ct. App. 2010); *Gem State Ins. Co. v. Hutchison*, 175 P.3d 172, 175 (Idaho 2007).

Most appellate courts use a combined standard of review in cases where the grant of a summary judgment is premised on an evidentiary ruling. First, they determine whether the trial court's exclusion of the evidence was correct using the "abuse-of-discretion" standard commonly associated with evidentiary rulings. Second, they consider the trial court's decision to grant the summary judgment de novo considering all of the admissible evidence in the light most favorable to the nonmoving party.[16] At least until today, Tennessee's courts have employed the same combined standard of review used by most of our federal and state counterparts. *Jacobs v. Nashville Ear, Nose & Throat Clinic*, 338 S.W.3d at 476; *Dubois v. Hykal*, 165 S.W.3d at 636-37; *Wilson v. Patterson*, 73 S.W.3d at 101; *Ayers ex rel. Ayers v. Rutherford Hosp., Inc.*, 689 S.W.2d at 160; *see also McDaniel v. Rustom*, 2009 WL 1211335, at *6-7; *Travis v. Ferraraccio*, 2005 WL 2277589, at *5-6.

---

[14](...continued)
*Dubois v. Haykal*, 165 S.W.3d 634, 636-37 (Tenn. Ct. App. 2004); *Wilson v. Patterson*, 73 S.W.3d 95, 101 (Tenn. Ct. App. 2001); *Ayers ex rel. Ayers v. Rutherford Hosp., Inc.*, 689 S.W.2d 155, 160 (Tenn. Ct. App. 1984); *see also McDaniel v. Rustom*, No. W2008-00674-COA-R3-CV, 2009 WL 1211335, at *6 (Tenn. Ct. App. May 5, 2009) (No Tenn. R. App. P. 11 application filed); *Travis v. Ferraraccio*, No. M2003-00916-COA-R3-CV, 2005 WL 2277589, at *5-6 (Tenn. Ct. App. Sept. 19, 2005) (No Tenn. R. App. P. 11 application filed).

[15]*See generally Martin v. Norfolk S. Ry.*, 271 S.W.3d at 84; *Wait v. Travelers Indem. Co. of Ill.*, 240 S.W.3d 220, 224 (Tenn. 2007).

[16]*See generally Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009); *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009); *Monks v. Gen. Electric Co.*, 919 F.2d 1189, 1192-93 (6th Cir. 1990); *Montgomery v. Montgomery*, 205 P.3d 650, 655-56 (Idaho 2009); *In re Belanger's Estate*, 433 N.E.2d 39, 42-43 (Ind. Ct. App. 1982); *Estate of Hanges v. Metro. Prop. & Cas. Ins. Co.*, 997 A.2d 954, 964 (N.J. 2010); *Chase Bank, USA v. Curren*, 2010 OH Ct. App. 6596, ¶ 16, 946 N.E.2d 810, 816; *Ellison v. Utah Cnty.*, No. 20080145-CA, 2009 WL 707647, at *1 (Utah Ct. App. Mar. 19, 2009).

The combined standard of review traditionally used by Tennessee's courts preserves the distinction between admissibility issues and issues regarding whether the party seeking a summary judgment is entitled to a judgment as a matter of law. It utilizes objective criteria that does not favor either party. Using the liberal review standard advocated by the Court today to decide admissibility questions relaxes the rules of evidence to favor the nonmoving party. The Court has not offered, and I cannot envision, cogent reasons for departing from existing practice or for tipping the scales in favor of the nonmoving party with regard to issues involving the admissibility of evidence.

### III.

Tenn. R. Civ. P. 56 permits a party to seek a summary judgment on the ground that the nonmoving party cannot prove an essential element of a claim or defense at trial. *Martin v. Norfolk S. Ry.*, 271 S.W.3d at 83-84; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d at 6. A jury trial on a particular claim or defense is unnecessary whenever there is a complete failure of proof with regard to an essential element of a claim or defense. *Alexander v. Memphis Individual Practice Ass'n*, 870 S.W.3d 278, 280 (Tenn. 1993) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)); *Byrd v. Hall*, 847 S.W.2d at 213 (citing *Celotex Corp. v. Catrett*, 477 U.S. at 321-25). As Judge Susano recently noted, "in seeking summary judgment, it is enough for a party to negate one element of a claim; it is not necessary that every element be negated. If any one element is negated, factual disputes as to [the] other elements are immaterial to the issue of summary judgment." *Jacobs v. Nashville Ear, Nose & Throat Clinic*, 338 S.W.3d at 477.

Summary judgment motions have been employed in medical malpractice cases for decades.[17] In cases where the testifying experts have been disclosed and discovery has been completed, it is now commonplace for parties to file a motion for summary judgment challenging the qualifications of an opposing party's expert. In such a motion, the moving party asserts that the testimony of the challenged expert is inadmissible because the expert does not satisfy the applicable requirements of the Tennessee Rules of Evidence[18] or of Tenn. Code Ann. § 29-26-115. Using the challenged expert's affidavits, depositions, or other evidentiary materials in the record,[19] the party seeking the summary judgment has the burden of demonstrating that the expert is not qualified to render an opinion.

---

[17]*See Bowman v. Henard*, 547 S.W.2d 527, 530-31 (Tenn. 1977); *Teeters v. Currey*, 518 S.W.2d 512, 513-14 (Tenn. 1974).

[18]All experts must satisfy the relevancy requirements in Tenn. R. Evid. 401 and 402 and the requirements for expert witnesses in Tenn. R. Evid. 702 and 703. *Johnson v. John Hancock Funds*, 217 S.W.3d at 425; *Kenyon v. Handal*, 122 S.W.3d 743, 759 (Tenn. Ct. App. 2003); *Church v. Perales*, 39 S.W.3d 149, 166 (Tenn. Ct. App. 2000).

[19]*Williams v. Baptist Mem'l Hosp.*, 193 S.W.3d 545, 553 (Tenn. 2006).

Even though these motions raise evidentiary issues, they can be outcome-determinative if the trial court determines that the nonmoving party's expert evidence regarding an essential element of a claim or defense is inadmissible. In cases in which the party seeking the summary judgment has also presented evidence regarding causation or the standard of care, successfully challenging the nonmoving party's expert entitles the moving party to a judgment as a matter of law because it has "'affirmatively negate[d] an essential element of the nonmoving party's claim'"[20] and because the remaining, and now uncontradicted, evidence supports the moving party's claim or defense. In cases where the nonmoving party has not presented its own evidence and the deadlines for disclosing experts and taking discovery have passed – as they had in this case – successfully challenging the nonmoving party's experts entitles the moving party to a judgment as a matter of law because it has successfully demonstrated that the "nonmoving party cannot establish an essential element of the claim at trial."[21]

Some have insisted, as Ms. Shipley does in this case, that a party who seeks a summary judgment in a medical malpractice case cannot succeed without filing evidentiary materials of its own establishing that it is entitled to a judgment as a matter of law. They argue that merely casting doubt on the nonmoving party's ability to prove an essential element of its case does not warrant a summary judgment.[22] This assertion is overstated because it fails to take the procedural posture of the case into consideration.

The existence of a general scheduling order, or an order of similar import, plays a pivotal role in the fate of a nonmoving party's claim or defense when challenged by a summary judgment motion. *See Dykes v. City of Oneida*, No. E2009-00717-COA-R3-CV, 2010 WL 681375, at *7 (Tenn. Ct. App. Feb. 26, 2010) (No Tenn. R. App. P. 11 application filed); *see also McDaniel v. Rustom*, 2009 WL 1211335, at *15 n.6. If no scheduling order exists or if the deadlines for disclosure and discovery have not passed, a summary judgment motion asserting that the plaintiff cannot establish an essential element of its claim at trial would be premature. *See Johnsey v. Northbrooke Manor, Inc.*, No. W2008-01118-COA-R3-CV, 2009 WL 1349202, at *9 n.5 (Tenn. Ct. App. May 14, 2009) (No Tenn. R. App. P. 11 application filed). However, a similar motion, filed after the deadlines imposed in a scheduling order have passed, will succeed if the moving party is able to convince the trial court that the evidence upon which the plaintiff relies to prove an essential element of its claim or defense is inadmissible. *McDaniel v. Rustom*, 2009 WL 1211335, at *15 n.6.

---

[20]*Hannan v. Alltel Publ'g Co.*, 270 S.W.3d at 6 (quoting *Byrd v. Hall*, 847 S.W.2d at 215 n.5).

[21]*Hannan v. Alltel Publ'g Co.*, 270 S.W.3d at 7.

[22]*See* Cornett, 77 Tenn. L. Rev. at 342-43 (discussing the mechanics of summary judgment when a plaintiff's expert's qualifications are at issue).

The trial court entered numerous scheduling orders in this case. Dr. Williams did not file her summary judgment motion challenging the qualifications of Drs. Rerych and Shaw until nine months after the taking of the last expert deposition. By that time, the deadline for taking depositions had been expired for more than one year, and the deadline for the disclosure of testifying experts had expired for almost two years. Under these circumstances, there can be no reasonable doubt that Dr. Williams would have been entitled to a summary judgment if she successfully demonstrated that the testimony of Drs. Rerych and Shaw was inadmissible. By the time Dr. Williams filed her summary judgment motion, the deadlines in the scheduling orders had long since passed.

## IV.

Along with employing an admissibility analysis that tilts in favor of the nonmoving party, the Court also dilutes the locality rule in Tenn. Code Ann. § 29-26-115(a)(1) by placing more emphasis on national or regional standards of care than has heretofore been permitted in medical malpractice cases. Rather than requiring that attention be focused on the medical community in which the defendant physician practices or a similar community, the Court now invites reliance on a national or regional standard of care as a basis for establishing familiarity with the standard of care in the community in which the defendant physician practices or in a similar community. Neither the plain language of Tenn. Code Ann. § 29-26-115(a)(1) nor this Court's prior interpretations of Tenn. Code Ann. § 29-26-115(a)(1) support this change in direction.

### A.

Geographic considerations have always played a significant role in the analysis of standard of care and causation issues and expert witness qualification issues in medical malpractice cases. Well before the General Assembly addressed the subject in 1975, the courts had recognized that the conduct of physicians should be measured against the conduct of other physicians in the same or a similar location. *Quinley v. Cocke*, 183 Tenn. 428, 436, 192 S.W.2d 992, 995 (1946) (consideration limited to a "given locality"); *Blankenship v. Baptist Mem'l Hosp.*, 26 Tenn. App. 131, 142-43, 168 S.W.2d 491, 495 (1942) (consideration limited to the "same neighborhood").

A review of the decisions handed down prior to 1975 reflect a lack of uniformity regarding the weight that geographical considerations should be given in medical malpractice cases. Some decisions imposed strict "'same' locality" requirements; others employed "'same or similar'" locality requirements; and still others appeared to impose no locality requirement at all. Joseph H. King, Jr., *The Standard of Care and Informed Consent Under the Tennessee Medical Malpractice Act*, 44 Tenn. L. Rev. 225, 258-59 (1977) ("King"). A review of these decisions also reflects that the courts were gradually de-emphasizing the importance of geographical considerations in medical malpractice cases. *Ayers ex rel. Ayers v. Rutherford Hosp., Inc.*, 689 S.W.2d at 162 (quoting *Scarborough v. Knoxville Orthopedic*

*Clinic*, No. 608 (Tenn. Ct. App. July 19, 1977) *perm. app. denied* (Tenn. Dec. 12, 1977); *McCay v. Mitchell*, 62 Tenn. App. 424, 439, 463 S.W.2d 710, 718 (1970).

In 1975, the Tennessee General Assembly codified what we now refer to as the "locality rule" when it enacted the Medical Malpractice Review Board and Claims Act of 1975.[23] As a result, the locality rule became a "creature of statute," *Chapman v. Bearfield*, 207 S.W.3d 736, 740 (Tenn. 2006), and the "hallmark of medical malpractice cases." Andrew T. Wampler, *Fly in the Buttermilk: Tennessee's Desire to Dispense with Layperson Common Sense and the Medical Malpractice Locality Rule*, 69 Tenn. L. Rev. 385, 422 (2002) ("Wampler"). Because the locality rule is now statutory, our task and obligation is to construe and apply it in a way that fully effectuates the General Assembly's purpose without limiting or expanding the statute beyond its intended scope. *Cf. Tuetken v. Tuetken*, 320 S.W.3d 262, 268 (Tenn. 2010); *Nichols v. Jack Cooper Transp. Co.*, 318 S.W.3d 354, 359-60 (Tenn. 2010); *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386 (Tenn. 2009).

Tenn. Code Ann. § 29-26-115(a)(1) embodies the "same or similar" community requirement adopted by some Tennessee courts prior to 1975. It plainly, clearly, and unequivocally requires experts offering opinions in medical malpractice cases to be licensed in Tennessee or in one of the eight states contiguous to Tennessee and to have practiced in one of those nine states during the year preceding the date of the alleged injury or wrongful act occurred. Similarly, it requires that these experts base their testimony on "[t]he recognized standard of accepted professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the claimant practices or in a similar community at the time the alleged injury or wrongful action occurred." Tenn. Code Ann. § 29-26-115(a)(1).

The locality rule evolved from a belief that medical customs and practices vary depending on the particular area in which a physician practices. *Sutphin v. Platt*, 720 S.W.2d 455, 457 (Tenn. 1986) (citing King, 44 Tenn. L. Rev. at 256). Numerous justifications have been offered for the rule over the years.[24] Accordingly, this Court has held that "[t]here is

---

[23]Act of May 21, 1975, ch. 299, § 14, 1975 Tenn. Pub. Acts 662, 669-70 (codified as amended at Tenn. Code Ann. § 29-26-115).

[24]Lawyers and academicians analyzing Tennessee's locality rule have identified at least seven justifications for the rule. They include: (1) physicians in smaller communities "do[ ] not have access to the same opportunities and medical resources as do physicians in [urban areas]"; (2) "the quality of medical information and resources continues to vary geographically"; (3) some diseases have regional concentrations which suggest "concomitant regional variations in medical practices and resource allocations"; (4) holding rural physicians to a national standard might discourage physicians from practicing in rural areas; (5) because of the important role that physicians play, "society should not allow just anyone to second-guess" a physician's decision; (6) because "medicine is not an exact science," a physician's discretionary decisions
(continued...)

-13-

an undeniable legitimate state interest in assuring that doctors charged with negligence in this State receive a fair assessment of their conduct in relation to community standards similar to the one[s] in which they practice." *Sutphin v. Platt*, 720 S.W.2d at 458.

To satisfy the requirements of Tenn. Code Ann. § 29-26-115(a)(1), an expert witness must "have knowledge of the standard of professional care in the defendant's applicable community or knowledge of the standard of professional care in a community *that is shown to be similar* to the defendant's community." *Robinson v. LeCorps*, 83 S.W.3d 718, 724 (Tenn. 2002). While complete lack of knowledge of the applicable community's medical resources would preclude an expert from testifying, *Mabon v. Jackson-Madison Cnty. Gen. Hosp.*, 968 S.W.2d 826, 831 (Tenn. Ct. App. 1997), an expert need not be familiar with all the medical statistics of the applicable community. *Ledford v. Moskowitz*, 742 S.W.2d 645, 648 (Tenn. Ct. App. 1987).

The focus of the inquiry should be on the expert's knowledge of the standards of practice in the community in which the defendant physician practices or a similar community, not on national standards, regional standards, or even statewide standards. *Kenyon v. Handal*, 122 S.W.3d at 762. Testimony involving national standards [and presumably regional or statewide standards] is no substitute for the evidence required by Tenn. Code Ann. § 29-26-115(a)(1). *Robinson v. LeCorps*, 83 S.W.3d at 724.

Expert witnesses cannot satisfy the requirements of Tenn. Code Ann. § 29-26-115(a)(1) simply by asserting that they are familiar with the standard of care in the defendant physician's community or in a similar community. They must explain the basis for their familiarity with the defendant physician's medical community. *Williams v. Baptist Mem'l Hosp.*, 193 S.W.3d at 553; *Stovall v. Clarke*, 113 S.W.3d 715, 722-23 (Tenn. 2003); *Robinson v. LeCorps*, 83 S.W.3d at 724-25; *Kenyon v. Handal*, 122 S.W.3d at 762. If they base their opinion on their familiarity with a medical community similar to the one in which the defendant physician practices, they must explain the basis not only for their understanding of the standard of care in the similar community but also for their belief that this community is similar to the community in which the defendant physician practices. *See Robinson v. LeCorps*, 83 S.W.3d at 725.

Just as it was over forty years ago, Tenn. Code Ann. § 29-26-115(a)(1) permits an expert to gain knowledge of the applicable standard of care "from sources and experience other than in the locality in which the cause of action arose." *McCay v. Mitchell*, 62 Tenn. App. at 439, 463 S.W.2d at 718. Accordingly, I agree with the Court's conclusion that the

---

[24](...continued)
should not easily be condemned in hindsight; and (7) because the practice of medicine is "complex and experimental . . . experts should be forced to base their opinions on practices that are actually used in the field." Wampler, 69 Tenn. L. Rev. at 423-24; King, 44 Tenn. L. Rev. at 257.

"personal, firsthand, or direct knowledge" requirement fashioned by the Court of Appeals in *Allen v. Methodist Healthcare Memphis Hospitals*, 237 S.W.3d 293, 296 (Tenn. Ct. App. 2007) and *Eckler v. Allen*, 231 S.W.3d 379, 386 (Tenn. Ct. App. 2006) goes too far. As the Court holds today, an expert in a medical malpractice case may educate himself or herself on the characteristics of the medical community in which the defendant physician practices or regarding the factual basis for concluding that the community with which the expert is personally familiar is similar to the medical community in which the defendant physician practices.

Demonstrating familiarity with the medical community in which the defendant physician practices is not insurmountably difficult. Chamber of Commerce demographic information about the community, social or recreational visits to the community, or simply extrapolating community standards from national or regional standards will not suffice. However, the required familiarity can be derived from, among other things, (1) attending medical school in Tennessee; (2) having internship, residency, or advanced specialty training in Tennessee; (3) formerly practicing in Tennessee; (4) teaching or presenting at seminars attended by Tennessee physicians; (5) attending continuing medical education or other practice-related seminars in Tennessee; (6) collaborating with physicians practicing in Tennessee on papers on relevant subjects that are published in professional journals; (7) participating in credentialing or licensing of Tennessee physicians or medical facilities; or (8) consulting on cases with Tennessee physicians.

In addition to the activities described in the preceding paragraph an expert retained to give an opinion in a medical malpractice case in Tennessee may (1) obtain information regarding the medical facilities and professionals practicing in the relevant area, (2) consult with physicians practicing in Tennessee regarding the relevant standard of care, (3) review the relevant articles and literature prepared by physicians practicing in Tennessee, or (4) tour the relevant facilities in the area.

**B.**

Applying the standards traditionally employed in cases of this sort, there is little question that the affidavit and deposition testimony of both Drs. Rerych and Shaw fails to demonstrate that they are sufficiently familiar with the standards of practice of general surgeons in Nashville or in a community similar to Nashville to be permitted to testify against Dr. Williams. Dr. Rerych conceded that most of his visits to the Nashville area were recreational. He could not remember the name of the community hospital he "toured" or anything specific about the hospital. While he testified that he had previously testified in one or two cases in Nashville and one case in the tri-city area, he provided little information regarding the nature of the cases, whether his qualifications to testify were challenged in any of these cases, or whether his testimony in these cases related to the standard of care for general surgeons.

Dr. Shaw's knowledge of the standard of care of general surgeons in Nashville and the basis for his belief that the medical community in Montgomery, Alabama is similar to the medical community in Nashville is even weaker than Dr. Rerych's. Dr. Shaw displayed no direct familiarity with the medical community in Nashville. He stated that he had never consulted on a case with a Nashville physician, and that while he had "interacted with a physician from Nashville," he had "not done so on a frequent or permanent basis." The basis for Dr. Shaw's conclusion that the medical community in Montgomery, Alabama was similar to the medical community in Nashville was based on his belief (1) that "the medical diseases and conditions that we treat are similar," (2) that "we're in a similar part of the country," (3) that "the case mix is similar," and (4) that Montgomery and Nashville have "similar geography, similar natural history of disease, [and] similar patient populations."

In addition, Dr. Shaw failed to explain how his emergency room practice enabled him to testify regarding the standard of care of a general surgeon with regard to scheduling appointments for patients recovering from thoracic surgery. In fact, Dr. Shaw stated in his deposition on several occasions that he was not giving an opinion regarding a general surgeon's standard of care.

Based on my review of the testimony of Drs. Rerych and Shaw, I find no basis to conclude that either the trial court or the Court of Appeals abused their discretion by determining that these witnesses had failed to demonstrate that they satisfy requirements of Tenn. Code Ann. § 29-26-115(a)(1). I would also find that the Court of Appeals erred by reversing the trial court solely because Dr. Williams did not present evidence establishing that her treatment of Ms. Shipley was consistent with the standard of care of general surgeons practicing in the Nashville area. Accordingly, I would affirm the trial court's decision to grant Dr. Williams's motion for summary judgment.

_____
WILLIAM C. KOCH, JR., JUSTICE