# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
August 23, 2012 Session

## SHIRLEEN NEVELS v. JOSEPH CONTARINO, M.D. ET AL.

**Appeal from the Circuit Court for Giles County**
**No. CC11065      Stella L. Hargrove, Judge**

---

**No. M2012-00179-COA-R3-CV - Filed November 16, 2012**

---

The trial court dismissed this medical malpractice claim on the defendants' motion for summary judgment and motion to dismiss, after excluding the testimony of the plaintiff's expert witness. Because the trial court erred in its application of the locality rule and Rule 702 of the Rules of Evidence, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Eileen M. Parrish, Nashville, Tennessee, for the appellant, Shirleen Nevels.

Robert M. Burns and C. Mark Harrod, Nashville, Tennessee, for the appellee, Joseph Contarino, M.D.

Brian Essary, Darrell Gene Townsend, and Alan Stuart Bean, Nashville, Tennessee, for the appellee, Hillside Hospital, LLC.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

On the morning of February 24, 2007, Shirleen Nevels went to the emergency room at Hillside Hospital in Pulaski, Tennessee with complaints of irritation in both eyes, both eyes being "matted up," nasal congestion, dizziness, chest pain, headache, and shortness of

breath.[1]  She reported a history of glaucoma and laser eye surgery.  Dr. Joseph Contarino, a specialist in emergency medicine, gave a primary diagnosis of bilateral conjunctivitis and prescribed sulfa antibiotic eye drops and an oral antibiotic, Septra.  Discharge instructions directed Ms. Nevels to see her primary care physician or an eye doctor within two to three days.

Ms. Nevels returned to the Hillside emergency room on February 28, 2007 with complaints including redness and swelling of the left eye with no visibility and severe pain. Dr. Contarino again acted as Ms. Nevels's treating physician.  He determined that she needed treatment by an opthalmologist; because there was no opthalmologist on call at Hillside Hospital, Dr. Contarino transferred Ms. Nevels to St. Thomas Hospital in Nashville with a discharge diagnosis of cellulitis of the left eye.  Upon her arrival at St. Thomas, Ms. Nevels was rushed into emergency surgery where her left eye was removed.

On February 25, 2008, Ms. Nevels filed this medical malpractice lawsuit against Dr. Contarino and Hillside Hospital.   In March 2009, Dr. Contarino filed a motion for summary judgment supported by his own affidavit in which he opined that the treatment he rendered to Ms. Nevels complied with the recognized standards of acceptable professional practice in Pulaski, Tennessee or a similar community.  Hillside Hospital filed a motion to dismiss asserting that the claims against the hospital were limited to vicarious liability and should be dismissed if the court granted summary judgment in favor of Dr. Contarino.  In opposing Dr. Contarino's motion for summary judgment, Ms. Nevels submitted the affidavit of Dr. Fred Mushkat, an emergency medicine specialist practicing at Western Baptist Hospital in Paducah, Kentucky.  The defendants took Dr. Mushkat's deposition in March 2011.

In April 2011, Hillside Hospital filed a motion to exclude the affidavit and deposition testimony of Dr. Mushkat, asserting that Dr. Mushkat did not satisfy the locality rule and that his testimony should be excluded under Tenn. R. Evid. 702 because it failed to substantially assist the trier of fact.  Dr. Contarino later adopted Hillside Hospital's motion.

The trial court held a hearing on Dr. Contarino's motion for summary judgment and the hospital's motion to dismiss on May 25, 2011.  The court took the matter under advisement. On May 27, 2011, Ms. Nevels filed a supplemental affidavit of Dr. Mushkat. Counsel for Hillside Hospital sent a letter to the trial court (with copies to all parties) in response to the supplemental affidavit.  On July 13, 2011, the trial court entered an order granting the hospital's motion to exclude Dr. Mushkat's testimony and its motion to dismiss, an order excluding Dr. Mushkat's supplemental affidavit, and an order granting Dr. Contarino's motion for summary judgment.  In granting the motion for summary judgment,

---

[1]Ms. Nevels admitted drinking alcohol and smoking marijuana the previous night.

the trial court made the following findings regarding Dr. Mushkat's affidavit:

> The Court finds that the Mushkat affidavit fails to meet the requirements of the locality rule pursuant to Tenn. Code Ann. § 29-26-115, and that Dr. Mushkat's testimony establishes that he is not familiar with the recognized standard of acceptable professional practice for an emergency room physician practicing in Pulaski, Tennessee. The locality rule requires that an expert witness must either have knowledge of the standard of care in Dr. Contarino's community or have knowledge of the standard of care in a similar community. Dr. Mushkat lacks familiarity with the standard of care in Pulaski, Tennessee and, alternatively, Dr. Mushkat fails to offer proof that he practices in a similar community to that of Dr. Contarino or has knowledge of the standard of care in a similar community. The Court also finds that the testimony of Dr. Mushkat fails to satisfy the requirements of Rule 702 of Tennessee Rules of Evidence. His testimony will not substantially assist the trier of fact in accordance with the Rule.

> The Court is troubled with the testimony of Dr. Mushkat relative to his lack of specificity. The Court is greatly troubled with his testimony that his opinions are based on the eventual outcome of the condition of the Plaintiff. The Court is amazed that an experienced expert such as Dr. Mushkat would provide such a deficient deposition and affidavit.

Ms. Nevels filed a motion to alter or amend and urged the court to reverse its judgment in light of the Tennessee Supreme Court's ruling in *Shipley v. Williams*, 350 S.W.3d 527 (Tenn. 2011), an opinion issued on August 11, 2011. The trial court denied Ms. Nevels's motion.

On appeal, Ms. Nevels argues that the trial court erred in dismissing the lawsuit based upon the locality rule; that the trial court erred in dismissing the lawsuit based upon a finding that Dr. Mushkat's opinion would not assist the trier of fact as required by Tenn. R. Evid. 702; and that the trial court erred in excluding Dr. Mushkat's supplemental affidavit.

STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003). In reviewing a summary judgment, this court must make a fresh determination that the requirements of Tenn. R. Civ.

P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50 (Tenn. 1997). We consider the evidence in the light most favorable to the non-moving party and resolve all inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). When reviewing the evidence, we must determine whether factual disputes exist. *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). If a factual dispute exists, we must determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Id.*; *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998). To shift the burden of production to the nonmoving party who bears the burden of proof at trial, the moving party must negate an element of the opposing party's claim or "show that the nonmoving party cannot prove an essential element of the claim at trial." *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008).[2]

With respect to issues regarding the admission or exclusion of evidence, we review the trial court's decision under an abuse of discretion standard. *Brown v. Crown Equip. Corp.*, 181 S.W.3d 268, 273 (Tenn. 2005); *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004). Under this standard, we are required to uphold the trial court's ruling "as long as reasonable minds could disagree about its correctness." *Caldwell v. Hill*, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007).

ANALYSIS

(1)

Ms. Nevels's first argument is that the trial court erred in excluding Dr. Mushkat's testimony under the locality rule.

The proof requirements for a medical malpractice action are found in Tenn. Code Ann. § 29-26-115(a):[3]

> In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):

---

[2]Tennessee Code Annotated § 20-16-101 (2011), a provision that is intended to replace the summary judgment standard adopted in *Hannan*, is inapplicable to this case. *See Sykes v. Chattanooga Hous. Auth.*, 343 S.W.3d 18, 25 n.2 (Tenn. 2011) (noting that section 20-16-101 is only applicable to actions filed on or after July 1, 2011).

[3]Because this action was commenced prior to the effective date of the 2012 amendments, we apply the version of the statute in effect in 2008.

(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;

(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and

(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

Subsection (a)(1) requires proof of either the standard of care in the community in which the defendant practiced at the time of the alleged injury or the standard of care in a similar community to the one in which the defendant practiced at the time of the alleged injury. As our Supreme Court has said, under Tenn. Code Ann. § 29-26-115(a)(1), "the conduct of doctors in this State is assessed in accordance with the standard of professional care in the community in which they practice or one similar to it." *Robinson v. LeCorps*, 83 S.W.3d 718, 724 (Tenn. 2002). This is known as the locality rule.

In its recent decision in *Shipley v. Williams*, 350 S.W.3d 527 (Tenn. 2011), our Supreme Court clarified the standards to be used by courts to determine whether a medical expert is qualified to testify in a medical malpractice case. *Id.* at 532. We will, therefore, begin with a discussion of *Shipley*. Ms. Shipley sued her general surgeon, Dr. Williams, for medical malpractice in failing to admit her to the hospital on November 18, 2001 (after abdominal surgery in January 2001) when she went to the emergency room with continuing abdominal pain, failure to properly assess her condition, and failure to provide necessary medical treatment. *Id.* at 533. In response to Dr. Williams's motion for partial summary judgment (on the claim for negligent failure to admit to the hospital), Ms. Shipley presented testimony from two medical experts, Dr. Rerych, a general surgeon, and Dr. Shaw, a specialist in emergency medicine. *Id.* The trial court granted partial summary judgment to Dr. Williams based on the testimony of Drs. Rerych and Shaw that the failure to admit in this case did not necessarily constitute a breach of the standard of care because Ms. Shipley's complaints could also have been addressed with a follow-up appointment and recheck the next day. *Id.* at 534.

Dr. Williams subsequently moved to disqualify Drs. Rerych and Shaw and for summary judgment on all claims. *Id.* The trial court ruled that these doctors did not meet the requirements of Tenn. Code Ann. § 29-26-115 and would not substantially assist the trier of fact as required by Tenn. R. Evid. 702 and 703. *Id.* On appeal, this court upheld the disqualification of Ms. Shipley's two medical experts, but reversed the summary judgment

-5-

on the basis that Dr. Williams had not negated an element of her claims or shown that she could not provide an essential element at trial. *Shipley v. Williams*, No. M2007-01217-COA-R3-CV, 2009 WL 2486199, at *6-7 (Tenn. Ct. App. Aug. 14, 2009).

After providing an extensive history of the locality rule and caselaw interpreting it,[4] the Supreme Court set forth its conclusions. *Id.* at 536-50. The Court emphasized that Tenn. Code Ann. § 29-26-115(b) sets forth the only three requirements for an expert witness to be competent to testify.[5] *Id.* at 550. Subsection (a) of Tenn. Code Ann. § 29-26-115 states the three elements a patient must establish for a medical malpractice claim: (1) the "recognized standard of acceptable professional practice in the profession and the specialty thereof . . . in the community in which the defendant practices or in a similar community. . . ," (2) that the defendant breached this standard, and (3) that the defendant's negligent act or omission proximately caused the plaintiff's injuries. *Id.* Thus, subsections (a) and (b) of Tenn. Code Ann. § 29-26-115 serve distinct purposes: "Subsection (a) provides the elements that must be proven in a medical negligence action and subsection (b) prescribes who is competent to testify to satisfy the requirements of subsection (a)." *Id.*

The Supreme Court went on to discuss the admissibility of testimony (as distinguished from the competency of a witness to testify) under Tennessee Rules of Evidence 702 and 703. *Id.* The Court noted: "A trial court should admit the testimony of a competent expert unless the party opposing the expert's testimony shows that it will not substantially assist the trier of fact or if the facts or data on which the opinion is based are not trustworthy pursuant to Rules 702 and 703." *Id.* at 551. The Court also made clear that, even at the summary judgment stage, the abuse of discretion standard of review governs a trial court's decision to admit or exclude testimony. *Id.* at 552.

Citing principles of stare decisis, the Court in *Shipley* acknowledged the continuing applicability of the locality rule, "the requirement that a medical expert must demonstrate a *modicum of familiarity* with the medical community in which the defendant practices or a similar community." *Id.* (emphasis added). The Court gave the following guidance

---

[4]In reviewing the brief of Ms. Nevels in this appeal, we observed that counsel included a 20-page verbatim recitation of the Supreme Court's discussion of the history of the locality rule from *Shipley* without indicating that the passage is a quotation or citing *Shipley* as the source. Such use of the language and reasoning of the Court without attribution is misleading and improper, and we hereby admonish counsel to take precautions to avoid plagiarism in the future.

[5]Tenn. Code Ann. § 29-26-115(b) requires that the witness be licensed in this state or a contiguous bordering state, that he or she be licensed in a profession or specialty that would make his or her testimony relevant to the case, and that he or she have practiced this profession in this state or a contiguous bordering state during the year preceding the alleged wrongful act.

regarding the level of proof required to satisfy the locality rule:

> Generally, an expert's testimony that he or she has reviewed and is familiar with pertinent statistical information *such as* community size, hospital size, the number and type of medical facilities in the community, and medical services or specialized practices available in the area; has discussed with other medical providers in the pertinent community or a neighboring one regarding the applicable standard of care relevant to the issues presented; *or* has visited the community or hospital where the defendant practices, will be sufficient to establish the expert's testimony as relevant and probative to "substantially assist the trier of fact to understand the evidence or to determine a fact in issue" under Tennessee Rule of Evidence 702 in a medical malpractice case and to demonstrate that the facts on which the proffered expert relies are trustworthy pursuant to Tennessee Rule of Evidence 703.

*Id.* (emphasis added). The Court also rejected the requirement, adopted in some previous opinions of this court, that a medical expert have "personal, firsthand, direct knowledge" of the standard of care in the same community or a similar community as the defendant. *Id.* (quoting *Eckler v. Allen*, 231 S.W.3d 379, 386 (Tenn. Ct. App. 2006)).

> The Court summarized its key conclusions in the following passage:
> (1) [A]t the summary judgment stage of the proceedings, trial courts should not weigh the evidence but must view the testimony of a qualified expert proffered by the nonmoving party in the light most favorable to the nonmoving party.
> (2) A claimant is required to prove . . . "[t]he recognized standard of acceptable professional practice . . . in the community in which the defendant practices or a similar community." Tenn. Code Ann. § 29-26-115(a)(1). The medical expert or experts used by the claimant to satisfy this requirement must demonstrate *some familiarity* with the medical community in which the defendant practices, or a similar community, in order for the expert's testimony to be admissible under Rules 702 and 703. Generally, a competent expert's testimony that he or she has reviewed and is familiar with pertinent statistical information such as community size, hospital size, the number and type of medical facilities in the community, and medical services or specialized practices available in the area; has had discussions with other medical providers in the pertinent community or a neighboring one regarding the applicable standard of care relevant to the issues presented; or has visited the community or hospital where the defendant practices, will be sufficient to establish the expert's testimony as admissible. (3) A medical expert is not required to demonstrate "firsthand" and "direct" knowledge of a medical

community and the appropriate standard of medical care there in order to qualify as competent to testify in a medical malpractice case. . . . (4) In addition to testimony indicating a familiarity with the local standard of care, a medical expert may testify that there is a broad regional standard or a national standard of medical care . . . .

*Id.* at 554 (emphasis added).

Having set out the applicable standards, the Supreme Court proceeded to apply these principles to the testimony of Drs. Rerych and Shaw. *Id.* Dr. Rerych, a board-certified general surgeon who practiced in Asheville, North Carolina, had travelled to Nashville to testify as a medical expert on one or two previous occasions and had toured one of the community hospitals in Nashville. *Id.* He testified that he had reviewed demographic information about Nashville and the hospital where Dr. Williams practiced; he opined that Asheville was a similar community to Nashville "as it applies to the facts and circumstances of this case." *Id.* Dr. Rerych admitted that he was not familiar with the characteristics of the hospital where Dr. Williams practiced. *Id.* In seeking to have Dr. Rerych's testimony excluded, defense counsel emphasized his testimony in response to questions regarding a national standard of care. *Id.* at 555. The Supreme Court concluded that "Dr. Rerych sufficiently established his familiarity with the recognized standard of acceptable professional practice in the community in which the defendant practices or in a similar community." *Id.* at 556. Thus, the Court found that the trial court erred in disqualifying Dr. Rerych.[6]

How do the Supreme Court's pronouncements in *Shipley* regarding the locality rule apply in the present case? In his original affidavit, Dr. Mushkat, who is board-certified in emergency medicine, testified that he had been practicing as an emergency physician at Western Baptist Hospital in Paducah, Kentucky since 1994. Dr. Mushkat's affidavit also contains the following statements:

During my career as an Emergency Physician in Paducah, Kentucky, I have referred Emergency Department patients to Nashville area hospitals on a regular basis. Based on my education, training, and experience, I am familiar with the recognized standards of professional practice for Emergency Physicians practicing in communities such as Pulaski, Tennessee. Each of the

---

[6]With respect to Dr. Shaw, the main issue was whether, as an emergency room physician, he practiced a "profession or specialty which would make the person's expert testimony relevant to the issues in the case." *Id.* at 556 (quoting Tenn. Code Ann. § 29-26-115(b)). As this issue is not relevant in the present case, we need not address this portion of the *Shipley* opinion.

opinions I render within this affidavit . . . are based on . . . my own experience as a[n] Emergency Physician in . . . communities similar to [Pulaski], Tennessee and in an emergency setting similar to Hillside Hospital.

Like Hillside Hospital, Western Baptist Hospital has been accredited by the Joint Commission . . . . In order to obtain accreditation, each hospital must remain in compliance with similar applicable standards of care in the treatment of their respective patients.

Paducah, Kentucky is located roughly 200 miles to the north of Pulaski, Tennessee. As a result, Paducah and Pulaski possess very similar demographic features. For instance, Pulaski, Tennessee has a population density of approximately 1,200.8 people per square mile, while Paducah, Kentucky has population density of 1,350.2 people per square mile. [The affidavit goes on to compare the two communities as to racial make up.]

Based upon my review of Ms. Nevels' medical records, I have some personal knowledge of the care and course of treatment she received at Hillside Hospital as well as St. Thomas Hospital. Based on my review of these records, I also have some personal knowledge of the nature and type of care Dr. Contarino provided Ms. Nevels when she arrived at Hillside's emergency room on February 24, 2007. . . .

Based upon my education, training, experience, and practice as an Emergency Physician, I am familiar with the recognized standard of acceptable practice applicable to a physician, such as myself, practicing the specialty of Emergency Medicine in Pulaski, Tennessee and similar communities like Paducah, Kentucky.
. . .

Specifically, and based upon my education, training, and experience, I am familiar with the recognized standard of professional practice for Emergency Physicians practicing in communities such as Pulaski, Tennessee and at facilities similar to Hillside Hospital as it existed at the time of Ms. Nevels' admission on or about February 24, 2007.

Dr. Mushkat went on to give his opinion regarding the relevant standard of care, Dr. Contarino's breach of the standard, and proximate causation.

In his subsequent deposition testimony, Dr. Mushkat stated that, to familiarize himself

with Pulaski, Tennessee, he conducted an internet search regarding Pulaski and Hillside Hospital. He described Pulaski and Paducah as small towns who referred patients to Nashville. He was aware that Hillside did not have an opthalmologist on staff and that there was no opthalmologist in Pulaski. Dr. Mushkat knew the relative size of the two hospitals, Hillside with 95 beds and Western Baptist with 250 beds. Dr. Mushkat opined that Western Baptist Hospital was a similar medical facility to Hillside "in that it's a community hospital not affiliated with a university teaching center and sees patients in the local community and surrounding areas."

In its argument concerning the locality rule, Hillside emphasizes the differences between Western Baptist and Hillside in relation to patient volume in the emergency room, staff and available resources, whether each facility received referrals from other hospitals, and whether there were opthalmologists on call in the community. Under *Shipley*, however, a medical expert must demonstrate only "a modicum of familiarity" or "some familiarity" with the relevant medical community. *Id.* at 552, 554. An expert's testimony that he has "reviewed and is familiar with pertinent statistical information such as community size, hospital size, the number and type of medical facilities in the community, and medical services or specialized practices available in the area" will be sufficient to make his testimony admissible. *Id.* at 554. An exact match between the two communities and medical institutions is not required.

In this case, we conclude that Dr. Mushkat sufficiently established his familiarity with the relevant standard of professional practice and that the trial court erred in excluding Dr. Mushkat's testimony under the locality rule. *See id.* at 556.

(2)

Ms. Nevels next argues that the trial court erred in excluding Dr. Mushkat's testimony under Tenn. R. Evid. 702 based upon its determination that the testimony would not be helpful to the trier of fact.[7] We agree.

In concluding that Dr. Mushkat's testimony would not assist the trier of fact, as required under Tenn. R. Evid. 702, the trial court was "greatly troubled with his testimony that his opinions are based on the eventual outcome of the condition of the Plaintiff." On appeal, the defendants argue that Dr. Mushkat's testimony relied on hindsight and was based solely on the outcome of Ms. Nevels's condition. The defendants cite the following excerpt from Dr. Mushkat's deposition in support of their argument:

---

[7]We note that, under the Supreme Court's analysis in *Shipley*, the locality rule is also a basis for exclusion under Tenn. R. Evid. 702.

Q. Okay. Now, I asked you the question about hindsight because I want to know in reviewing this case and in developing your opinions whether you have tried to put yourself in the shoes of Dr. Contarino. And let's look at first February 24th, 2007. Have you tried in this case to put yourself in his shoes and – and only consider what he knew as of February 24th, 2007?

A. That's what I do with every case.

Q. Okay.

A. I put myself in the position of moving forward with the case. When I say I'm reviewing the case prospectively, that's exactly what I mean. I put myself in the position of: I'm the emergency room physician. I've been handed this record with these nurses' notes on it. I have this patient before me. What do I do next?

Q. Okay. And that's –

A. That's my –

Q. You understand that that's your duty in a case like this. Right?

A. Yes, sir.

Q. I want to look at the records if you have a set of the notes from the 24th.

. . .

A. They should be available right here. Thank you.

Q. (By Mr. Bean) What I want you to do, Doctor, is to – again, doing what we just talked about, put yourself in the shoes of Dr. Contarino. And you just told me what you want to do, which is to look at what was noted and look at what he was aware of, and tell me what it – what it is, just from this chart, that tells you – or that has caused you to have the opinion that Dr. Contarino misdiagnosed Ms. Nevels' condition on the 24th.

A. There isn't anything in this chart in and of itself that does that. As I mentioned earlier, quite exhaustively, my opinions come from the outcome, the fact that she didn't have a conjunctivitis in the right eye and Dr. Contarino's deposition testimony and his statements about his understanding of these problems.

Q. Okay.

A. But looking at the chart in and of itself, the only problems I encounter are no visual acuity noted, a significant lack of documentation about the appearance of the eye by both the nurses and by Dr. Contarino. And going with what we have here, there isn't anything that specifically says this is not conjunctivitis.

Q. Okay. All right.

A. That's the best I can do.

Q. Okay. And that's all I'm asking you to do. And you agree with me that Dr. Contarino wouldn't have had the benefit of knowing what happened on

March 1st and all that other stuff –
A. No.
Q. – as of 2/24. Right?
A. I –
Q. Didn't have a time machine?
A. Unless he's clairvoyant, he wouldn't have known that.

Taken in isolation, the above testimony may detract from the weight to be accorded to Dr. Mushkat's testimony. At the summary judgment stage, however, a trial court is not to weigh the evidence and must view the evidence in the light most favorable to the nonmoving party. *Shipley*, 350 S.W.3d at 554. In his extensive discovery deposition, Dr. Mushkat also testified that he was basing his opinion on the information before Dr. Contarino at the time when he examined Ms. Nevels the first time in the emergency room:

Q. And don't we know from the records at Saint Thomas what happened to [Ms. Nevels]?
A. I do. But I don't know that in advance necessarily. I don't recall.
Q. Okay.
A. I may have known it, but I don't – when I – when I look at these charts, I don't look at the ultimate outcome and think, Okay, how can we tear this apart given the ultimate outcome? I look at its prospectively and say, "Given the patient's presenting problem and the presenting physical exam and the vital signs and everything that's on the original chart, was the standard of care met; or was it not?" That, I view to be my job in this type of work.

Moreover, the following testimony at the beginning of the portion cited by the defendants does not support their "hindsight" theory:

Q. . . . I asked you the question about hindsight because I want to know in reviewing this case and in developing your opinions whether you have tried to put yourself in the shoes of Dr. Contarino. . . . Have you tried in this case to put yourself in his shoes and – and only consider what he knew as of February 24th, 2007?]
A. That's what I do in every case.
Q. Okay.
A. I put myself in the position of moving forward with the case. When I say I'm reviewing the case prospectively, that's exactly what I mean. I put myself in the position of: I'm the emergency room physician. I've been handed this record with these nurses' notes on it. I have this patient before me. What do I do next?

-12-

. . .

Q. You understand that that's your duty in a case like this. Right?

A. Yes, sir.

Thus, there is deposition testimony to support a conclusion that Dr. Mushkat gave his opinion concerning how Dr. Contarino failed to follow the standard of care in light of Ms. Nevels's symptoms, complaints, and history at the time of his initial assessment of the patient.

Moreover, there is a difference between basing an opinion on hindsight and making logical inferences about a patient's physical symptoms based upon the nature of his or her condition. For example, it can properly be inferred that a patient with a gunshot wound would have bullet holes in his or her body when examined by a doctor. Dr. Mushkat's statements concerning the outcome of the case can be interpreted as indicating that he made inferences from the eventual outcome—the removal of Ms. Nevels's left eye due to periorbital cellulitis and the absence of any conjunctivitis in the right eye during her hospitalization at St. Thomas—concerning the state of Ms. Nevels's eyes several days earlier when Dr. Contarino initially examined her. The following testimony supports such an interpretation:

A. . . . [W]e know that when she finally showed up at Saint Thomas [on February 28, 2007], there's nothing in the record to suggest that she had any – any eye problem in the right eye. During that entire hospitalization, she didn't receive any eye drops to the right eye. And as a consequence, one can say that if she had conjunctivitis in the right eye and had she been following the medications as prescribed, she might not have had any visible problems on the 1st [of March], but she certainly would have developed a reoccurrence of the eye infection by the 6th. Yet for the entire stay at Saint . . . Thomas, she never received – she never was noted to have any kind of right eye problem. Therefore, I think it's fairly safe to make the statement that she did not have conjunctivitis in the right eye on her initial presentation on the 24th.

Q. So you're saying because of the absence of a reoccurrence of any symptoms in the right eye, she didn't have bilateral conjunctivitis?

A. That's correct.

Under Tenn. R. Evid. 702, the relevant inquiry is whether the testimony will "substantially assist the trier of fact to understand the evidence or to determine a fact in issue." The trier of fact is not to weigh the evidence or assess credibility at the summary judgment stage. *Lawrence Cnty. Educ. Ass'n v. Lawrence Cnty. Bd. of Educ.*, 244 S.W.3d 302, 320 (Tenn. 2007). The trial court failed to view the evidence in the light most favorable to Ms. Nevels and improperly assessed the weight of the evidence at the summary judgment

stage. Dr. Mushkat, a witness whose competency is not at issue, presented testimony that would substantially assist the court.

As the Supreme Court emphasized in *Shipley*, "[o]nce the minimum requirements [of Tenn. Code Ann. § 29-16-115(b) and Tenn. R. Evid. 702 and 703] are met, any questions the trial court may have about the extent of the witness's knowledge, skill, experience, training or education pertain only to the weight of the testimony, not its admissibility." *Shipley*, 350 S.W.3d at 550-51. A trial court abuses its discretion "when it disqualifies a witness who meets the competency requirements of section 29-26-115(b) and excludes testimony that meets the requirements of Rule 702 and 703." *Id.* at 552. We must conclude that the trial court erred in excluding Dr. Mushkat's testimony.

In light of our conclusions regarding the first two issues presented, we need not consider the propriety of the trial court's decision regarding the supplemental affidavit of Dr. Mushkat.

CONCLUSION

We reverse the trial court's decision and remand for further proceedings consistent with this opinion. Costs of the appeal are assessed equally against the appellees, Hillside Hospital and Dr. Contarino, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE