# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 21, 2012 Session

# MARKINA WESTMORELAND, ET AL. v. WILLIAM L. BACON, M.D., ET AL.

### Appeal from the Circuit Court for Davidson County
### No. 05C3729    Joseph P. Binkley, Jr., Judge

---

### No. M2011-01811-COA-RM-CV - Filed February 26, 2013

---

The Tennessee Supreme Court remanded this case to us for consideration in light of its opinion in *Shipley v. Williams*. In the original appeal of this medical malpractice case, this court affirmed the trial court's grant of summary judgment to the defendants on the basis that the plaintiff's only expert witness was not competent to testify pursuant to the Tennessee Medical Malpractice Act, Tenn. Code Ann. § 29-26-115. On remand we conclude the trial court erred in ruling that the plaintiffs' expert was not competent to testify and, consequently, the plaintiffs created genuine issues of material fact, making summary judgment for defendants inappropriate. We reverse the grant of summary judgment and remand the case back to the trial court for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Donald N. Capparella, Amy J. Farrar, Bill M. Wade, Candi Renee Henry, Nashville, Tennessee: William Bryan Smith, Memphis, Tennessee, for the appellants, Markina Westmoreland, et al.

Robert Lee Trentham, James A. Beakes, III, Nashville, Tennessee, for the appellee, William L. Bacon, M.D.;

Michael A. Geracioti, Kelly R. Thomas, Nashville, Tennessee, for the appellee, Wichai Chinratanalab, M.D.;

Thomas W. Lawrence, Jr., Matthew A. Moushon, Nashville, Tennessee, for the appellee,

Chukwuemeka Venatius Ikpeazu, M.D.

## OPINION

This medical malpractice case was initially appealed to this Court in 2010. We affirmed the trial court's grant of summary judgment to the defendant physicians in early 2011. *Westmoreland v. Bacon*, 2011 WL 350428 (Tenn. Ct. App. Jan. 31, 2011). The Tennessee Supreme Court granted the plaintiff's application solely for the purpose of remanding the case to this Court to reconsider in light of *Shipley v. Williams*, 350 S.W.3d 527 (Tenn. 2011), which was decided after this Court's earlier decision. For the reasons stated below, we now reverse the trial court's award of summary judgment and remand this case to the trial court.

## I. FACTUAL BACKGROUND

Dorris Dennis was a fifty-two year old woman who suffered from several medical conditions. She began seeing Dr. Wichai Chinratanalab, who was a hematologist, beginning in July 2003. Dr. Chinratanalab diagnosed Ms. Dennis with pancytopenia, which is a blood disorder, hepatitis C, and alcohol abuse.

Ms. Dennis complained of hip pain in December 2004, and Dr. Chinratanalab referred her to Dr. William Bacon, an orthopedic surgeon. Dr. Bacon performed a hip replacement on Ms. Dennis on December 13, 2004. Following the surgery, Dr. Bacon prescribed an anti-coagulant drug called Lovenox for Ms. Dennis to prevent her from developing blood clots. Dr. Bacon ordered a lower than normal dose because of Ms. Dennis's pre-existing blood disorders and propensity for bleeding. Dr. Chinratanalab was consulted on December 16 because Ms. Dennis's potassium level was low. Dr. Chinratanalab lowered Ms. Dennis's Lovenox dosage, and on December 20 Dr. Chinratanalab suggested the Lovenox be discontinued. Dr. Chukwuemeka Venatius Ikpeazu, another hematologist, performed a hematology consultation on December 20, and following this consultation he recommended Ms. Dennis be given an alternative drug to Lovenox. Ms. Dennis's condition began to decline on December 22, and she died the following day from internal bleeding, specifically from a severe diffuse pulmonary and gastrointestinal hemorrhage.

## II. PROCEDURAL BACKGROUND

Ms. Dennis's children (the "Plaintiffs") filed a medical malpractice action in December 2005 against Dr. Bacon, Dr. Chinratanalab, and Dr. Ikpeazu, (together, the "Defendants"), as well as others who have been dismissed from the case. Each of the Defendants filed a motion for summary judgment in April 2009, supported by an affidavit

asserting he had not breached the applicable standard of care. In response, the Plaintiffs submitted an affidavit from Dr. Richard M. Sobel, an emergency room physician, in opposition to the Defendants' motions for summary judgment, asserting that each of the Defendants had breached the applicable standard of care.

The trial court granted the Defendants' motions for summary judgment. The court found the Defendants' affidavits were sufficient to shift the burden to the Plaintiffs to show there was a genuine issue of material fact with regard to whether the Defendants had breached the applicable standards of care. The trial court then found that Dr. Sobel's affidavit failed to demonstrate Dr. Sobel was familiar with the recognized standards of acceptable professional practice applicable to the Defendants' specialties of hematology and orthopedics. The court wrote:

> Plaintiffs failed to make an adequate showing that Dr. Sobel is familiar with the recognized standard of acceptable professional practice applicable to the Defendants . . . . [T]he Court finds that the Affidavit of Dr. Sobel does not comply with the requirements of Tenn. Code Ann. § 29-26-115(a) and (b). Dr. Sobel is not competent to testify as to the recognized standard of acceptable professional practice applicable to the Defendants . . . in this matter, and his Affidavit is therefore inadmissible.

The Plaintiffs offered no other expert proof to support their malpractice claim, and the trial court thus granted the Defendants' motions. The Plaintiffs filed a motion to alter or amend the summary judgment award supported by a supplemental affidavit from Dr. Sobel. The trial court denied the Plaintiffs' motion to alter or amend, stating,

> [T]he Supplemental Affidavit of Dr. Sobel provides no new or additional information showing him to be sufficiently familiar with the specialties of Orthopaedic Surgery and/or Hematology in order to comply with the requirements of T.C.A. § 29-26-115(a) and (b). Therefore, Dr. Sobel's previously submitted Affidavit, as well as his recently filed Supplemental Affidavit, fail to raise a genuine issue of material fact, and the Defendants . . . are entitled to summary judgment as originally ordered by this Court on July 15, 2009.

The Plaintiffs appealed the dismissal of their complaint to this court, which affirmed the trial court's grant of summary judgment and dismissal of the Plaintiffs' complaint. This court described the dispositive issue as whether the trial court erred in excluding Dr. Sobel's affidavits: "[W]e must determine whether his medical training or his experience as an emergency room specialist makes his testimony 'relevant to the issue in this case' as required

by Tenn. Code Ann. § 29-26-115(b)." This Court then reviewed Dr. Sobel's affidavits and concluded that the trial court had not abused its discretion in finding that Plaintiffs failed to establish that Dr. Sobel was a qualified witness as required in Tenn. Code Ann. § 29–26–115(a)(1), (b). Since there was no other expert witness for Plaintiffs, they had failed to create a genuine issue of material fact. Consequently, we affirmed the trial court's grant of summary judgment. *Westmoreland*, 2011 WL 350428, at *11.

Eight months later the Tennessee Supreme Court issued its opinion in *Shipley v.Williams*, 350 S.W.3d 527 (Tenn. 2011). In *Shipley* the Supreme Court addressed, *inter alia*, the requirements a party must satisfy to show its expert is competent to testify in a medical malpractice action. Recognizing that its opinion could alter the outcome in this case, the Supreme Court granted the Plaintiffs' application for permission to appeal for the purpose of remanding the case back to this Court to reconsider in light of *Shipley v. Williams*.

## III. STANDARD OF REVIEW

The party moving for summary judgment has the burden of persuading the trial court that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008). The moving party may make the required showing and thereby shift the burden of production to the nonmoving party by either (1) affirmatively negating an essential element of the nonmoving party's claim or (2) showing the nonmoving party cannot prove an essential element of its claim at trial. *Id.; Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008).

If the moving party makes a properly supported motion, the nonmoving party must produce evidence establishing that a genuine issue of material fact exists. *Martin*, 271 S.W.3d at 84 (citing *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)). A trial court does not weigh the evidence in deciding a motion for summary judgment; it must accept the nonmoving party's evidence as true and draw all reasonable inferences in favor of the nonmoving party. *Martin*, 271 S.W.3d at 84; *Staples v. CBL Assoc., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000).

The resolution of a motion for summary judgment is a matter of law. Therefore, we review the trial court's judgment granting the Defendants' motions *de novo*, with no presumption of correctness. *Martin*, 271 S.W.3d at 84; *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004).

The trial court in this case refused to admit the affidavit of the Plaintiffs' expert, Dr. Sobel. If admission of the affidavit was correctly decided, then the Plaintiffs will have failed to rebut the Defendants' proof that they met the applicable standard of care so as to create

a dispute of fact as to that element of a malpractice claim. As in prior cases, *Shipley* reaffirmed that a trial court's decision to accept or disqualify an expert medical witness is reviewed under the abuse of discretion standard: "A trial court abuses its discretion when it disqualifies a witness who meets the competency requirements of section 29-26-115(b) and excludes testimony that meets the requirements of Rule 702 and 703." *Shipley*, 350 S.W.3d at 552.

## IV.  THE TENNESSEE MEDICAL MALPRACTICE ACT

In order to prevail on a medical malpractice claim, a plaintiff must prove each of the elements set forth in Tenn. Code Ann. § 29-26-115(a): (1) the recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices (2) that the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and (3) as a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

Each of these elements must be established by expert testimony. *Shipley*, 350 S.W.3d at 537 (citing *Williams v. Baptist Mem'l Hosp*., 193 S.W.3d 545, 553 (Tenn. 2006), *Stovall v. Clark*, 113 S.W.3d 715, 723 (Tenn. 2003), and *Robinson v. LeCorps*, 83 S.W.3d 718, 724 (Tenn. 2002)).

Another section of the Tennesee Medical Malpractice Act sets forth the requirements an expert witness must satisfy in order to be competent to testify in a medical malpractice case:

> No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a), unless the person was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make the person's expert testimony relevant to the issues in the case and had practiced this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred. This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses. The court may waive this subsection (b) when it determines that the appropriate witnesses otherwise would not be available.

Tenn. Code Ann. § 29-26-115(b).

In *Shipley* the Supreme Court set out a new, or clarified, framework for analyzing

whether an expert's testimony is admissible in a medical malpractice case. In doing so, the Court explained the distinction between Tenn. Code Ann. § 29-26-115 (a) (elements of malpractice) and (b) (competency of expert):

> Subsections (a) and (b) serve two distinct purposes. Subsection (a) provides the elements that must be proven in a medical negligence action and subsection (b) prescribes who is competent to testify to satisfy the requirements of subsection (a). Therefore, **when determining whether a witness is competent to testify, the trial court should look to subsection (b), not subsection (a).**

*Shipley*, 350 S.W.3d at 550 (emphasis added).

As evidenced by its language, subsection (b) has three components: the proposed expert must (1) be licensed to practice in Tennessee or one of its eight contiguous bordering states; (2) practice a profession or specialty which would make the individual's expert testimony relevant to the issues in the case; and (3) have practiced this profession or specialty in one of these states during the year preceding the date of the alleged injury or wrongful act. *Shipley*, 350 S.W.3d at 550.

The only requirement that is at issue in this appeal is whether Dr. Sobel is competent to testify because he is an emergency room physician and the defendants are hematologists and an orthopedic surgeon. Defendants assert that he is not competent to testify as to the applicable standard of care or its alleged breach because he does not "practice a profession or specialty which would make the individual's expert testimony relevant to the issues in the case." This is the same statutory requirement that was at issue in *Shipley*.

## V. THE *SHIPLEY V. WILLIAMS* DECISION

In *Shipley* the plaintiff, Ms. Shipley, alleged the defendant, Dr. Williams, who was a general surgeon, committed medical malpractice by failing to admit her when she presented herself to the emergency room following an operation, failing to assess and diagnose her condition properly, and failing to provide necessary medical treatment. 350 S.W.3d at 533. Dr. Williams filed a motion for partial summary judgment on the failure to admit claim, and Ms. Shipley relied on an affidavit by Dr. Ronald Shaw, an emergency room physician, to oppose the motion. *Id.*

Dr. Williams moved to disqualify Dr. Shaw, and the trial court ruled that Dr. Shaw was not qualified to testify as an expert because, as an emergency room physician, he did not practice a specialty relevant to the standard of care issues applicable to a general surgeon.

*Id*. at 534. The Supreme Court, however, applying a clarified standard, disagreed.

The Supreme Court stated that it would be inclined to agree with the trial court's reasoning if the issues in the case pertained to surgery. *Id*. at 556. However, section 29-26-115(b) requires only that the proposed expert practice a profession or specialty that would make his or her testimony relevant to the issue(s) in the case, not that the proposed expert practice the same profession or specialty as the defendant. *Id*.

Consequently, the Court examined the issues and claims in the case and found that they pertained to whether Dr. Williams provided appropriate and timely follow-up care to Mrs. Shipley, not to the surgery Dr. Williams performed. Dr. Shaw testified that he was familiar with the standard of care applicable to a surgeon in the limited area of the standard of communication between a referring doctor and an emergency room doctor, how to apportion responsibility for deciding whether the patient should be admitted, and how, when, and by whom a patient should receive follow-up care. *Id*. at 557. Thus, the Supreme Court reversed the trial court's disqualification of Dr. Shaw and concluded he was competent to testify as an expert because his testimony was probative and relevant to the issues Mrs. Shipley raised in her lawsuit. *Id*.

## VI.  ISSUE IN THE PLAINTIFFS' CASE

Following the analysis in *Shipley*, we must first determine the issues and claims in the case before us. Then, we can determine whether Dr. Sobel practices "a profession or specialty which would make the individual's expert testimony relevant to the issues in the case." Tenn. Code Ann. § 29-26-115(b). A court's inquiry into the competency of a proffered witness requires an examination of the issues presented in the case to determine whether the expert's profession or specialty makes the expert's testimony relevant to **those** issues.

At issue herein is the administration and management of the medications Ms. Dennis was given following her hip replacement surgery and the appropriate standard of care for Ms. Dennis considering her pre-existing medical conditions that put her at risk for internal bleeding following the surgical procedure.

With regard to the applicable standards of care at issue, Dr. Sobel testified through his affidavits regarding his practice and specialty and his experience and training that would make his profession relevant to the issues:

> 12. . . . [T]he expected knowledge and training of medical providers like [the Defendants] and the resources available to them, the applicable standard of

-7-

care in such specialties in Nashville, Davidson County, Tennessee and Atlanta, Georgia were similar in 2004. This is specifically true with respect to the standard of care applicable to physicians prescribing Lovenox, after procedures that were performed or omitted as it relates to Doris Dennis. This would include the continuance of Lovenox, with evidence of a dropping red blood cell count and several clear and present risk factors for continued hemorrhage, e.g., low platelets and a concomitant prescription of Bextra.

13. Based upon my education, training, and experience, I am familiar with the recognized standard of acceptable professional practice for physicians prescribing Lovenox in Nashville, Tennessee, and similar communities in 2004 (and as it otherwise existed at all times relevant hereto). Specifically, I am familiar with the recognized standard of care for treatment of adults who are prescribed Lovenox with medical conditions identical or similar to those exhibited by Doris Dennis in 2004. I have then personally and currently do prescribe Lovenox routinely in my practice.

Dr. Sobel then testified about his training and experience and how it intersected with the training and experience of each of the Defendants, both the hematologists and the orthopedic surgeon. He testified that in his opinion each of the Defendants had breached the applicable standard of care. He stated, *inter alia*:

15. . . . A hematologist, an internist and an emergency room physician are all expected to understand the basic physiology of the blood components. In the case of Doris Dennis, it is my opinion that the hematologist did not demonstrate the level of competency that would be expected of any general medical physician caring for such a patient. . . . I do have the necessary training, clinical and peer review experience to know what the standard of care was in the case of Ms. Dennis and how it was breached by the defendant in the ways I will testify. . . .

. . . . .

18. Ms. Dennis was by definition at higher risk for gastrointestinal and/or internal bleeding after the use of Lovenox. She was at additional risk with the prescription of Bextra, a medication that inhibits platelet function. Any prescribing medical physician and certainly a hematologist, is expected to know that a significantly low platelet count (thrombocytopenia) enhances the risk of bleed in such patients. . . .

. . . . .

21. I have had considerable training, clinical and teaching experience in orthopedics. As an emergency room physician, I am called upon to evaluate, diagnose and provide the initial management and stabilization of a wide variety of orthopedic problems. . . . I do have the necessary training, clinical and peer review experience to know what certain standards of care were in the case of Ms. Dennis and how it was breached by the defendant.

22. . . . I have cared for many patients with post operative orthopedic problems. It is my opinion that the orthopedist did not demonstrate the level of competency in certain respects that would be expected of a medical physician caring for Ms. Dennis.

. . . . .

26. I have testified in Tennessee as to the standards of care for physicians prescribing Lovenox. I have instructed physicians in many specialties including orthopedists in training regarding the effects, adverse effects and indications for use of these drugs and their classes. I have routinely prescribed Lovenox in my practice for years. . . . I have coordinated the care of patients receiving anti-coagulants (like Lovenox) and anti-inflammatory agents (like Bextra) with physicians of many specialties, including orthopedists. I am aware of the level of knowledge ordinarily possessed by orthopedic physicians with respect to these classes of medication, that is, anti-inflammatory agents and anti-coagulants. Any prescribing physician or attending physician is required to understand the use of these medications and that their combined use increases the risk of potential adverse effects, including internal and gastrointestinal bleeding.

The Defendants acknowledge that an expert's profession or specialty is not determinative as to the expert's competency. However, they claim Dr. Sobel's profession rendered his testimony not relevant to the issues in this case because he is an emergency room physician rather than a surgeon or hematologist.[1] This is essentially the same argument

---

[1] Dr. Bacon contends, for example, that "Plaintiffs have failed to demonstrate . . . that the testimony offered by Dr. Sobel is sufficiently within his education, training, or experience to allow him to offer relevant standard of care testimony concerning Ms. Dennis' hip replacement surgery . . . ."

(continued...)

made by the defendant doctor in *Shipley*.

The defendant argued that the expert was not competent to testify as to the standard of care of a general surgeon because he was not a general surgeon. However, the plaintiffs' claim in *Shipley* was that the defendant surgeon was negligent, not for the surgical procedure she performed on Mrs. Shipley, but for her post-surgical treatment of Mrs. Shipley. The Supreme Court determined that the claims in the malpractice action did not concern the surgery performed by the defendant, but rather the surgeon's decision not to admit the plaintiff when she presented herself to the emergency room following the surgery, an issue Dr. Shaw was competent to testify about. *Shipley*, 350 S.W.3d at 556. The Court wrote:

> As noted, the issues in this case regarding allegations of Dr. Williams' negligence do not pertain to surgery performed by Dr. Williams or related surgical care, but rather whether Dr. Williams provided appropriate and timely follow-up care under the circumstances presented, including Mrs. Shipley's medical condition at the time she presented to the emergency room the first time. Dr. Shaw was thus qualified to testify as an expert because his testimony was probative and relevant to the issues and allegations presented in Mrs. Shipley's lawsuit.

*Shipley*, 350 S.W.3d at 556-57.

In the case before us, the Plaintiffs contend the Defendants were negligent in their monitoring of Ms. Dennis and in prescribing the medications Ms. Dennis was given after her surgery. As this Court recognized in its 2011 opinion, Dr. Sobel's affidavits "establish that he is familiar with a general standard of care concerning the benefits, risks and general uses for Lovenox . . . ." *Westmoreland*, 2011 WL 350428, at *9.

We have reconsidered this appeal based upon the analysis in *Shipley* and the testimony from Dr. Sobel's affidavits quoted above. We conclude that our earlier opinion was in error and that the trial court erred in ruling that Dr. Sobel's testimony was not relevant to the issues in the case by applying an incorrect legal standard to determine competency.

Since Dr. Sobel was competent to provide expert testimony on the claims at issue in this case, the Plaintiffs established the existence of a genuine issue of material fact sufficient

---

[1](...continued)

Dr. Chinratanalab contends Dr. Sobel is not familiar with "Dr. Chin's specialty of hematology" and "Dr. Sobel's supplemental affidavit shows that Dr. Sobel has never practiced hematology or had any specialized training in hematology . . . ."

to defeat the Defendants' motions for summary judgment on the issue of the Defendants' negligence.

## VII. CONCLUSION

We reverse the trial court's judgment granting the Defendants summary judgment and remand this case to the trial court for further proceedings. Costs of this appeal shall be taxed in equal parts to the Appellees, William L. Bacon, Wichai Chinratanalab, and Chukwuemeka Venatius Ikpeazu, for which execution shall issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE